122 A.2d 550 (1956)
Maurice LAVINE, Plaintiff,
v.
GULF COAST LEASEHOLDS, Inc., a Delaware corporation, Leason & Co., Inc., an Illinois corporation, Robert G. Behrman, Jr., Wallace M. Davis, Jr., Roy B. Kelly, Ricard R. Ohrstrom, William P. Swearingen, Harold J. Vance, W. R. Kerr and "John Doe" and "Richard Roe", Defendants.
Court of Chancery of Delaware, New Castle.
May 7, 1956.
Irving Morris, of Cohen & Morris, Wilmington, and Edward Lee, New York City, for plaintiff.
Arthur G. Logan and Aubrey B. Lank of Logan, Marvel, Boggs & Theisen, Wilmington, for defendant, Gulf Coast Leaseholds, Inc., and individual defendants other than John Doe and Richard Roe.
Clair J. Killoran of Killoran & VanBrunt, Wilmington, for defendant Leason & Co., Inc.
SEITZ, Chancellor.
Plaintiff as a common stockholder of defendant Gulf Coast Leaseholds, Inc., ("Gulf") filed this action against, inter alia, Gulf and certain individuals who are directors of Gulf, charging certain illegal stock exchanges. We are now concerned only with his second cause of action and paragraph 16 of the third cause of action. Defendants, other than Doe, Roe, and Leason & Co., ("defendants") have moved for summary judgment dismissing the second cause of action and striking paragraph 16 of the third cause of action on the ground that they involve transactions which were completed prior to the date plaintiff became a stockholder. They rely of course on the statute and Rule of Court which prevent a stockholder in a derivative action from attacking a transaction which took place prior to his stock purchase. See 8 Del.C. § 327 and Chancery Court Rule 23(b), Del.C.Ann.
Plaintiff first contends that his complaint asserts a class action and not a derivative action and says, consequently, that the statute and rule have no application. He argues, alternatively, that even if it is a derivative action the alleged wrongs were not completed until after plaintiff became a stockholder and so the statute and rule are not applicable in any event.
*551 Let us consider the undisputed facts which are pertinent to a disposition of defendants' motions. By letters dated October 19, 1954, stockholders owning 28,394 shares of Gulf's Class A stock offered to exchange them for Gulf's common stock on a basis of two shares of common for each share of Class A. The letters stated that, "if you [Gulf] are desirous of making the exchange on this basis, please give me your answer within a period of five days from date". At a meeting of Gulf's directors on October 19, 1954, the letters were presented and a resolution adopted to accept the offers and make the exchange subject to the right of Gulf's president to impose such terms and conditions as he deemed proper and for the best interest of the corporation. However, it is clear that Gulf's letter of October 29, 1954 to the Class A stockholders clearly constituted a counter offer because it was not submitted within five days and also because it imposed substantial terms and conditions. Indeed it contained a place for acceptance by the stockholders.
The five conditions are as follows:
"(1) The Class A Stock so obtained by the Company as a result of such exchange shall be held by the Company for cancellation, redemption and retirement, and will be so cancelled, redeemed and retired if, as and when such exchange has been approved and ratified by resolution adopted by the holders of record of a majority of the total number of shares of the corporation having voting powers at the time outstanding at a meeting of the stockholders called for that purpose upon at least ten days' notice given in accordance with the by-laws of the corporation to the stockholders, all in accordance with Section 244 of the Delaware Corporation Law.
"(2) It is presently contemplated that this matter will be presented to the stockholders at the next annual meeting, and the Company will be under no duty to present this matter until that time.
"(3) Should the stockholders disapprove of this exchange, the Company will reissue to you ____ shares of its 6¼% Cumulative Convertible Class A Stock, and you will transfer to the Company ____ shares of its Common Stock so that the parties will thereupon occupy the identical positions as they did prior to the exchange.
"(4) If such exchange is approved and ratified by the stockholders, you will waive all rights to receive cumulative preferential dividends on the Class A Stock so exchanged by you.
"(5) It is understood and agreed that pending approval or disapproval by the stockholders of said exchange of stock, there will exist no restrictions on you with respect to trading in, selling, transferring or hypothecating the said ____ shares of Common Stock which will be issued to you immediately."
The owners of 28,194 shares of Class A presumably accepted the counter offer because during November 1954 they sent their certificates to Gulf's transfer agents and received in exchange therefor 56,388 shares of Gulf common stock.
Not later than December 22, 1954, plaintiff became the owner of Gulf's common stock.
On March 30, 1955, there was a general meeting of stockholders at which the exchange of 28,194 shares of Gulf's A stock for twice as many common stock was approved.
On April 15, 1955, the 200 additional shares of Gulf's Class A were converted into 400 shares of common.
Assuming without deciding that this is a derivative action, do the facts show that the transaction complained of was completed before plaintiff became a stockholder? The answer to this question depends upon the meaning of the agreement.
A reading of the so-called conditions incorporated in the agreement shows that *552 the consummation of the agreement was conditioned upon stockholder approval. The only provision which casts any doubt on this matter at all is number five which permits trading in the common stock received prior to the stockholders' meeting. Admittedly stockholder action under this provision might have caused some practical difficulties in the event the stockholders had subsequently disapproved the exchange. However, this does not nullify the explicit condition in the agreement that it was made subject to stockholder approval. Defendants argue that the stockholders' approval provision referred only to cancellation of the Class A stock received. I think the quoted language of the conditions shows that the contemplated stockholder approval was not of such narrow import.
But the conclusive answer to defendants' argument is found in the fact that this action was taken pursuant to § 244 of the Delaware Gen.Corp.Law. This Section requires stockholder approval.
From the foregoing analysis it appears quite clear that the transaction of which plaintiff complains was legally completed when the stockholders voted their approval. This approval was admittedly given after plaintiff became a stockholder. Consequently, I conclude that the transaction of which plaintiff complains was not completed before plaintiff became a stockholder. His claim is therefore not barred by the statute or rule of court. Compare Maclary v. Pleasant Hills, Del.Ch., 109 A. 2d 830.
Defendants rely on Elster v. American Airlines, Del.Ch., 100 A.2d 219. It is distinguishable on the ground that the contract there under attack (contract granting an option) had been legally concluded before the plaintiff became a stockholder. Here a prime condition precedent to the completion of the agreement, viz., stockholder approval, was not fulfilled until after plaintiff became a stockholder.
Defendants' motions for summary judgment and to strike will be denied. In view of my conclusion it is unnecessary to consider plaintiff's other contention.
Order on notice.