**Alan R. KAHN, Plaintiff,**

v.

**SEABOARD CORPORATION, Seaboard Flour Corporation, H. Harry Bresky, Otto Bresky, Jr., and Charles M. Goldman, Defendants.**

**Civ. A. No. 11485.**

Court of Chancery of Delaware, New Castle County.

Submitted: July 30, 1992.
Decided: Jan. 14, 1993.

Robert D. Goldberg, of Biggs and Battaglia, Wilmington, for plaintiff.

Samuel A. Nolen, and Daniel A. Dreisbach, of Richards, Layton & Finger, Wilmington, for defendants.

## OPINION

ALLEN, Chancellor.

The complaint purports to be brought derivatively on behalf of Seaboard Corporation against Seaboard's controlling (75%) stockholder, Seaboard Flour Corporation ("Flour") and three individuals who comprise the board of directors of Seaboard, two of whom are the controlling (71%) shareholders of Flour. The charge is that the individual defendants "required the Company to enter into numerous transactions with Flour ... which benefit Flour at the Company's expense." Cplt. ¶ 5. Identified are three transactions, only one of which is relevant to the present motion. It concerns a ten year time charter of seven vessels entered into in 1986 between a · wholly owned subsidiary of Seaboard ("Overseas Limited") and subsidiaries of H & O Shipping Ltd., a subsidiary of Flour. It is alleged that:

Pursuant to said agreements, Overseas is required to pay substantial management fees and other sums, purportedly for administration and insurance (collectively "Fees"), in addition to time charter costs. For the year ended December 31, 1986, Overseas paid $3,347,000 in time charter costs and an additional $4,273,-000 in fees. For the year ended December 31, 1987, Overseas paid $3,019,000 in time charter costs and an additional $3,609,000 in fees.

\*     \*     \*     \*     \*     \*

In the transaction described above, [defendants] have violated [their duty of loyalty] by structuring such transaction so as to obtain better terms for Flour than would have been the case had the transactions been negotiated on an arm's-length basis.

Cplt. ¶¶ 5A and 6.

This action was commenced in April 1990, more than three years after the creation of the time charter. Delaware Code Section 8106 of title 10 establishes three years as the governing limitation of actions period for any:

action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant....

10 Del.C. § 8106 (1991). Relying upon this statute, defendants have now moved that so much of the complaint as purports to state a claim predicated on the 1986 time charter be dismissed as untimely.

Plaintiff, of course, resists. He contends that the wrongs allegedly arising from the 1986 time charter are continuing wrongs

that are not barred by applicable limitation provisions in any event. Secondly, he asserts that what is alleged constitutes wrongful self-dealing by a corporate fiduciary and is not subject to the terms of Section 8106 but to the more flexible equitable doctrine of laches, which it is implied would not justify dismissal here. Finally, plaintiff argues that the record is not sufficiently developed to permit the court to rule on the timeliness of the institution of the suit at this time.

For the reasons that follow I conclude that defendants' motion must be granted, but that plaintiff shall have sixty days in which he may file an amended complaint that sets forth facts constituting good grounds to toll the running of the statute in this instance.

## I.

■ I turn first to the continuing wrong theory offered by plaintiff. The facts alleged, if they constitute a wrong, do not, in my opinion, constitute a continuing wrong for purposes of analyzing a limitations bar. The wrong attempted to be alleged is the use of control over Seaboard to require it to enter into a contract that was detrimental to it and beneficial, indirectly, to the defendants. Any such wrong occurred at the time that enforceable legal rights against Seaboard were created. Suit could have been brought immediately thereafter to rescind the contract and for nominal damages which are traditionally available in contract actions. Complete and adequate relief, if justified, could be shaped immediately or at any point thereafter.

This type of case is unlike a continuing tort where the defendant continues, without right, an action injurious to plaintiff. Where a continuing wrong acts as an answer to the defense of limitations it is typically the case that plaintiff can prove her claim by reference only to actions within the limitations period. Thus, for example, if plaintiff is complaining about a nuisance (a noise for example) emitted by a

neighboring plant for, say five years, plaintiff can prove her claim by proving the elements of the claim which occur daily or weekly or whenever, within the limitation period. It is irrelevant for limitations purposes that these daily or weekly invasions have been going on for years.[1] Here, however, the "continuing wrong" is performance of a contract. It is implicitly admitted that payments were made by Seaboard as provided in the contract. There is no claim that payments in excess of those contemplated by the time charter have been made. So long as the time charter is not rescinded, the payments it calls for are legal obligations, not wrongs. Thus, unlike a continuing wrong the only liability matter to be litigated involves defendants' 1986 actions in authorizing the creation of these contract rights and liabilities.

## II.

■ I turn now to the second ground advanced by plaintiff why the motion to dismiss the complaint as time-barred should be denied: that the complaint charges a fiduciary with wrongful self-dealing.

If the claim asserted arose in 1986 it would, absent tolling, fall outside of the period established by Section 8106, which is quoted above, for the timely commencement of actions. It is, however, generally said that such statutes of limitations do not apply directly in equity, but that equity follows the law and therefore such statutes will, in appropriate cases, be applied analogously. *E.g., Adams v. Jankouskas*, Del. Supr., 452 A.2d 148, 157 (1982); *Atlantis Plastics Corp. v. Sammons*, Del.Ch., 558 A.2d 1062, 1064 (1989); *Haas v. Sinaloa Exploration & Dev. Co.*, 17 Del.Ch. 253, 152 A. 216, 217–18 (1930).

I start then with the obvious counterpoint observation that statutes of limitations *could* apply directly to causes in Chancery of every sort. It is within the constitutional power of our legislature to do so. Indeed in England, whence our own

---

1. Although failure to complain might in some circumstances constitute strong evidence of acquiescence in defendants' conduct. *See Bay*

*Newfoundland Co. v. Wilson & Co., Inc.*, 24 Del.Ch. 30, 4 A.2d 668, 671 (1939).

law on the subject originates, actions against trustees are now (since at. least 1980) subject to a comprehensive statute of limitations.[2] Since the proposition that equitable claims could be subjected to a statute of limitation appears to be hardly contestable,[3] when courts say that statutes of limitations do not directly apply to actions in equity, they are in effect interpreting particular statutory language as not intending to reach such claims. They do so for good historical reasons.

But whether the history is good or not, courts have for several centuries drawn a distinction between the operations of the statute of limitations at law and in equity. They have held that such statutes are intended to apply to actions at law, but not to exclusively equitable claims. *See, e.g., Bush v. Hillman Land Co.*, 22 Del.Ch. 374, 2 A.2d 133, 134 (1938). Where no statute of limitations is thus available to test the timeliness of a complaint, the Court of Chancery will approach the problem of timeliness as one of laches. Under this approach, the court will inquire into the particulars of the matter to determine whether there is such unfairness to the defendant occasioned by a delay in asserting the claim as to disable the plaintiff from pressing the claim. *E.g., Gardner v. Panama R.R. Co.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951). When the court applies a statute of limitation by analogy, however, it makes no such specific inquiry; it makes no assessment of fairness or prejudice.

Thus an important question is which claims will be treated under which doctrine. The answer given by Chancellor Kensey Johns, Jr. in 1845, in an early Delaware case, and well documented before and since, is that laches would apply *to equitable claims* (Chancery's exclusive jurisdiction) but that the statute would apply by analogy to legal claims that find their way into Chancery in search of an equitable

remedy (*i.e.*, Chancery's concurrent jurisdiction, *e.g.*, specific performance of a contract). The rationale for this metaphysical distinction was stated by Chancellor Johns, as follows:

> The statute operates as a bar to the remedy at law, and is applied by analogy in equity, and *therefore, cannot be applied to those trusts which are the mere creatures of equity, for there is no ground in such cases for comparison;* but when the same subject matter ... can also be made the subject ... of action at law the rule of analogy applies....

*Perkins v. Cartmell's Adm'r.*, Del.Err. & Apps., 4 Del. 270, 4 Harr. 270, 271 (1845) at note (a). (emphasis added).

As the Court of Errors and Appeals put the same point on review of the Chancellor's decree in *Perkins:*

> [I]t is an established rule that where the statute bars the legal remedy, it shall bar the equitable remedy in analogous cases or in reference to the same subject matter and where the legal and the equitable claim so far correspond that the only difference is that one remedy may be enforced in a court of law and the other in a court of equity.

*Id.* at 274.

Thus, when required to decide whether laches or the statute provided the appropriate analytic structure for the Court of Chancery in deciding an issue of timeliness, 19th century courts made a conceptual inquiry. In effect they asked, what is the source of the right asserted by the plaintiff; is it a legal right that a court of law would recognize or is it a strictly equitable right (an equitable estate for instance or a "trust [which is] the mere creature of equity"). If it were a right cognizable at law (*i.e.*, one for which a remedy was available at law), it fell within Chancery's concurrent jurisdiction and the statute of limitation

---

**2.** England has departed from the organic law respecting limitation of actions against fiduciaries for breach of trust by enacting a comprehensive six year limitation period for such actions. *See* Harold G. Hansbury & Ronald H. Maudsley, *Modern Equity* (Martin ed. 1985) at 626. That statute however continues the traditional law with respect to claims of fraud or self-dealing by the trustee of an express trust. *See, e.g., Tito v. Waddell*, 3 All E.R. 129 (1977).

**3.** 2 Pomeroy's Equity Jurisprudence § 419b (5th ed. 1941).

would apply, albeit analogously. If, however, the claim was not cognizable at law, but was one of equitable origin—an action by a beneficiary against a trustee for example—the claim would fall under equity's exclusive jurisdiction, to which the laches analysis would apply. *See* 2 Pomeroy's Equity Jurisprudence §§ 419a, 419e (5th ed. 1941).

The workability of this doctrinal structure is dependent upon an understanding of the "nature" of various sorts of jurisdiction that the English Court of Chancery and, by adoption, our own court, possesses. As decades passed, however, this knowledge evolved from every day practical knowledge of lawyers to professional exotica. By the mid-twentieth century, judges were beginning to grow less comfortable with those old concepts of concurrent and exclusive chancery jurisdiction. In 1934 Chancellor Wolcott applied the old learning in an easy case, *Cochran v. F.H. Smith & Co.,* 20 Del.Ch. 159, 174 A. 119 (1934). The case was easy because the right asserted was not of equitable origin (the claim was common law fraud). It could have been brought in the Superior Court. Thus, it plainly was a concurrent jurisdiction case to which the statute should apply by analogy and it was so applied. But in reaching its decision to apply the statute of limitations by analogy to bar the action, the court noticed that "the bill does not seek any remedy peculiar to equity." *Id.* 174 A. at 121. The comment reflects, I think, a weakening of the old system because the request for an equitable remedy would not in any case have altered the character of the jurisdiction that had been invoked or the correct outcome of the motion.

In 1944 our Supreme Court faced a timeliness question in the context of suit by a trustee in bankruptcy asserting claims of fraud, waste and breach of fiduciary duty against directors of the bankrupt corpora-

tion. *See Bovay v. H.M. Byllesby & Co.,* 27 Del.Ch. 381, 38 A.2d 808 (1944). The action was brought many years after the wrong alleged. The directors asserted that since they were not trustees of an express trust (as to whom equity's jurisdiction was certainly seen as exclusive) the jurisdiction that the Court of Chancery was called upon to exercise was "concurrent" with law. It was argued, therefore, that the statute of limitation should be applied by analogy. The Court accepted that the case was one of concurrent jurisdiction (although arguably it was not [4]) but nevertheless declined to permit the defendants to invoke the statute:

> Sound public policy requires the acts of corporate officers and directors in dealing with the corporation to be viewed with a reasonable strictness. Where suit is brought in equity to compel them to account for loss or damage resulting to the corporation through passive neglect of duty, without more, the argument that they ought not to be deprived of the benefit of the statute of limitations is not without weight; but *where they are required to answer for wrongful acts of commission by which they have enriched themselves to the injury of the corporation, a court of conscience will not regard such acts as mere torts, but as serious breaches of trust,* and will point the moral and make clear the principle that corporate officers and directors, while not in strictness trustees, *will, in such case, be treated as though they were in fact trustees of an express and subsisting trust,* and without the protection of the statute of limitations, especially where insolvency of the corporation is the result of their wrongdoing.

38 A.2d at 820. (emphasis added).

By the middle part of the twentieth century Delaware courts had begun less fre-

---

**4.** The claims were generally that payments made pursuant to contracts between the corporation and its directors were unfair to the corporation and constituted wrongful self-dealing. Since the payments were called for by apparently valid contracts it is doubtful that these payments did constitute a wrong at law. Unlike law, however, which does not generally weigh the adequacy of consideration, equity does impose an obligation on fiduciaries in their dealing with trust property. In such contracts equity will evaluate the consideration and adjust bargains. Thus, in my opinion, the case arguably was one falling into equity's exclusive jurisdiction to which, under the old doctrine, laches not limitations apply.

quently to express their conclusions in terms of the lore of exclusive or concurrent jurisdiction. In the derivative suit context this is especially apparent in three cases: *Glassberg v. Boyd*, 35 Del.Ch. 293, 116 A.2d 711 (1955); *Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246 (1970) and *Halpern v. Barran*, Del.Ch., 313 A.2d 139 (1973).

*Bokat* being an opinion of the Supreme Court is the most significant of these. The complaint sought compensation for alleged self-dealing from the individual defendant who, it was claimed, controlled the beneficiary corporation. The moving defendant had appeared in the action under compulsion of the old sequestration process, in September 1967, more than three years after the date of the wrongs alleged. *Id.* at 248. The Supreme Court dismissed the defendant. Citing *Glassberg v. Boyd*, it stated quite broadly:

> the claims sought to be asserted ... are for the payment of money, essentially damages. Actions seeking such damages must be instituted in three years from the time the causes of action accrued.

*Bokat*, 262 A.2d at 250. The primary holding of *Bokat* on this point may be interpreted to mean that any action for damages requires Chancery to apply the statute of limitations:

> When the relief sought in Chancery is legal in nature, it is clear that Chancery will apply the statute of limitations rather then the equitable doctrine of laches [citing *Perkins* and *Cochran*].

*Id.* (emphasis added). Relief "legal in nature" need not include every claim for which money damages are sought. For example, an action to require a trustee to pay the fair value of trust property he personally consumed or expended would be an action for money but, traditionally, would not be considered an action for "relief legal in nature" since a court of law would not award any remedy. One therefore might best interpret "legal relief" to mean "relief that a court of law will grant" (*i.e.*, relief for a legal claim). But the *claim* dismissed in *Bokat*, unfair self-dealing, was not a claim "legal in nature," but

a claim of equitable origin; technically a court of law would not evaluate whether a contract between a corporation and its controlling shareholder was on fair terms. Assuming that is the case, the meaning of the quoted language must be that, whether the claim asserted is legal in nature or equitable, whenever plaintiff seeks money in a derivative suit, her claim is subject to the statute of limitations. This is the interpretation that has been accorded to *Bokat*. *See, e.g., Laventhol, Krechstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168, 169 (1976); *Boeing Co. v. Shrontz*, Del.Ch., No. 11273, Berger, V.C., 1992 WL 81228 (Apr. 20, 1992).

For our purposes however, a secondary (albeit implicit) holding of *Bokat*, on this point, is equally important. The *Bokat* court distinguished the 1944 *Bovay* case on the ground that the complaint in *Bokat* made it clear that plaintiffs *had known all of the acts alleged to give rise to liability* for more than three years before they attempted to add the defendant as a party. *Bokat*, 262 A.2d at 251. Thus, the Supreme Court treated *Bovay* as a case in which the running of the statute had been tolled by ignorance of defendants' actionable self-dealing. *See* p. 276 *infra*.

In 1973 this Court applied the primary *Bokat* holding, in the case of *Halpern v. Barran*, Del.Ch., 313 A.2d 139 (1973). That was a derivative suit brought on behalf of Shell Oil Co. against its 69% owner, Royal Dutch Shell Petroleum Company. The complaint alleged that Shell Oil had been required to enter into business transactions with affiliates of Royal Dutch Shell that were unfair to Shell. The court held "it is by now firmly established that the three year statute of limitations ... applies to shareholder derivative actions which seek the recovery of money or other legal relief." *Halpern*, 313 A.2d at 141. The *Halpern* court refused to apply the *Bovay* approach finding *Bovay* a "particularly egregious" case and noting *Bovay* "has been consistently restricted in later decisions." *Halpern*, 313 A.2d at 142.

Thus today it no longer seems apparent to judges as it would have to Chancellor

Johns, or other 18th or 19th century jurists, that just because equity had created the corporate directors' duty to exercise corporate power loyally, (the fiduciary duty of loyalty being an example of a "trust that is the mere creature of equity" (p. 272 *supra*)) there is, for that reason, "no ground" to compare that duty—or regard it as analogous—to duties created at law and governed by the legal statute of limitation.

\* \* \*

Modernly in law, as in much else, we tend to think functionally rather than metaphysically. The intricacies of 18th and 19th century equity jurisprudence are of intellectual and historical interest, but our law today must be explained and justified in terms that seem operationally significant to people today, whose interests are to be determined by that law. Thus, in my opinion, when we ask whether the passage of time alone should bar a stockholder from suing corporate directors in the corporation's name, we are asking a very practical question whose answer should make practical sense, while being consistent with our legal traditions.

In functional terms there are good reasons why a corporate stockholder ought to be treated differently than a plaintiff who is a stranger to the defendant from whom he seeks compensation for a tort. That good reason arises out of the assigned roles of stockholder and director in our corporation law. The corporate shareholder commits capital to the supervision and management of the corporate board. In doing so the stockholder becomes dependent upon the skill and loyalty of those in control of the corporate enterprise. Legally sanctioned relationships of dependence and trust are important for the law to enforce for both instrumental and expressive reasons. Given the fiduciary duties that the law imposes upon the relationship among those serving as corporate directors, stockholders are entitled to rely on the good faith of the directors when they act with respect to the corporation's property or processes. There is, of course, great social utility in the willingness of some to trust others in this way.

Since trust and good faith are the essence of this relationship, it would be corrosive and contradictory for the law to punish reasonable reliance on that good faith by applying the statute of limitations woodenly or automatically to alleged self-interested violations of trust. It does not, in my opinion, do so. Reasonable reliance upon the competence and good faith of others who have assumed legal responsibilities towards a plaintiff have not infrequently been held sufficient to toll the running of an applicable statute of limitations.[5]

Thus, in my opinion, fraudulent concealment of a wrong is not the only circumstance that may toll the running of the statute. *See Halpern v. Barran, supra.* Chancery has long exercised a certain discretion in applying the statute of limitation in cases involving fraud for example, even where affirmative acts of concealment have not been alleged.

The old Chancery case *Sparks v. Farmers' Bank*, Del.Ch., 3 Del.Ch., 274 (1869) reflects equity's long-standing flexibility in tolling limitations with respect to actions involving fraud:

> But most especially does equity relieve against any attempt to use the statute as a cover for fraud. In such case this court will even interfere in an action at law to restrain a defendant from pleading the statute; *a fortiori* will it refuse in the furtherance of fraud, to enforce the statute by its own decree in a case

---

5. A failure to detect the existence of a claim will not infrequently be held to toll the running of the statute of limitations where plaintiff reasonably relies upon the competence and good faith of one with special skills or knowledge who accepts a legal responsibility towards plaintiff. I refer here especially to professional malpractice claims. *See, e.g., Isaacson, Stopler & Co. v. Artisan's Sav. Bank*, Del.Supr., 330 A.2d 130 (1974); *Child, Inc. v. Rogers*, Del.Super., 377 A.2d 374, 376–77 (1977) *aff'd in relevant part, rev'd on other grounds*, Del.Supr., 401 A.2d 68 (1979); *see also Shane v. Shane*, 891 F.2d 976, 985 (1st Cir.1989) (fiduciary's failure to disclose relevant facts tolls the statute); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1496 (D.C.Cir.1989); *Hobbs v. Bateman, Eichler, Hill, Richards, Inc.*, 164 Cal.App.3d 174, 210 Cal.Rptr. 387 (1983).

which, like this, is one of equitable jurisdiction. It treats the statute as running from the discovery of the fraud, not before. There has been controversy whether courts of law can afford this relief against the statute, but none whatever as to the power of a court of equity. 2 *Sto.Eq.Jur.*, 1521, 1521a; *South Sea Co. v. Wymondsell*, 3 *P.Wms.*, 143; [24 Eng. Rep. 1004 (1732)] *Deloraine v. Browne*, 3 *Bro. C.C.*, 363; [29 Eng.Rep. 739 (1792)] *Booth v. Ld. Warrington*, 4 *Bro. P. C.*, 163 [2 Eng.Rep. 111 (1714)].

There is nothing in the present case to except it from the operation of the rule. It is true that equity will not relieve against the bar of the statute in favor of a party who has been in *laches* in not using means within his power to discover the fraud.

3 Del.Ch., at 306 (English Reports citations added). The same rule is widely acknowledged today. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Lopez v. Swyer*, N.J.Supr., 300 A.2d 563, 567 n. 2 (1973); *Merchants Mortgage Co. v. Lubow*, Md.Ct., 275 Md. 208, 339 A.2d 664, 669 (1975); *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543, 546 n. 3 (1983).[6]

Thus, while in *Mastellone v. Argo Oil Co.*, 46 Del. 102, 82 A.2d 379 (1951), (which was not a fraud case) our Supreme Court held that ignorance of the occurrence of a wrong did not toll the running of the statute, the Court did note that:

> There are, of course, certain well defined exceptions such as ... certain types of fraud or concealment of the facts which would have disclosed the tort.

*Id.* 82 A.2d at 383. I take it that one of the "types of fraud" that falls within the ex-

ception of the rule of *Mastellone* is fraud perpetuated by one who, because he has legal power over the property of others, has fiduciary obligations to those others. *E.g., Giehrach v. Rupp.*, N.J.Err. & Apps., 112 N.J.Eq. 296, 164 A. 465 (1933) (running of statute tolled until time of discovery of wrong by self-dealing executor). Therefore, in the context of an existing fiduciary relationship and a claim of actionable self-dealing, I must express a contrary opinion to that expressed in *Halpern v. Barran, supra,* to the effect that without an affirmative act of concealment by defendant, plaintiff's ignorance of the facts constituting the alleged wrong cannot act to toll the running of the statute of limitations. In my opinion, at least in some circumstances, it can. *See Brown v. Dolese*, 38 Del.Ch. 471, 154 A.2d 233, 239 (1959) (failure to disclose, but no misrepresentation with respect to, the corporation's cash position).

In some circumstances, even an attentive and diligent shareholder relying, in complete propriety, upon the good faith of corporate directors may be completely ignorant of transactions that do constitute self-interested acts injurious to the corporation.

A close reading of *Bokat* demonstrates the soundness of the principle that the statute of limitations applies, but is tolled in derivative actions charging actionable self-dealing, until the shareholders knew or had reason to know of the facts constituting the alleged wrong. In *Bokat*, which did allege unfair self-dealing, the Supreme Court distinguished *Bovay* on the ground that *Bokat* the limitations period had run out, counting from the time at which plaintiffs had known of the facts alleged. Thus, *Bokat*, in harmonizing *Bovay*, recognized in its implicit secondary holding that where

---

**6.** On this subject the opinion of Judge Leahy in *Tobacco and Allied Stocks v. Transamerica Corp.*, D.Del. 143 F.Supp. 323 (1956) is instructive:

> The strict rule, obtaining in courts of law, recites the cause of action for fraud accrues, and the period begins to run, when the fraud is successfully perpetrated. The equitable rule ... counts from the time of the discovery of the fraud, as qualified in many decisions confining it substantially to cases of fraudulent concealment. The leading case in the

federal courts applying the equitable rule to suits at law is *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636, decided in 1874.

> \* \* \* \* \* \*

> Restated, the federal doctrine means limitation and laches does not begin to run until evidence of fraud is discovered or could have been discovered had reasonable diligence been exercised, for whatever is notice calling for inquiry is notice of everything to which such inquiry might have led.

143 F.Supp. at 328–29.

wrongful self-dealing is alleged in a derivative action, the statute does not run against the plaintiff until he or she knew or had reason to know the facts alleged to give rise to the wrong.

At all events this is the rule I deduce from the foregoing and the rule I will apply to this aspect of this motion.

### III.

 Let me now turn to the application of this rule to the complaint here. Generally, of course, the bar of limitations is an affirmative defense. *Brown v. Dolese*, 38 Del.Ch. 471, 154 A.2d 233 (1959) *aff'd* 39 Del.Ch. 1, 157 A.2d 784 (1960). But it is equally well settled that where the complaint itself alleges facts that show that the complaint is filed too late, the matter may be raised by defendants' motion to dismiss, as here. *Mayer v. Adams*, 40 Del.Ch. 94, 174 A.2d 313 (1961); *Boeing Co. v. Shrontz*, Del.Ch., No. 11273, 1992 WL 81228, Berger, V.C. (Apr. 20, 1992); *Brooks v. Savitch*, Del.Super., 576 A.2d 1329, 1330 (1989); *Glassberg v. Boyd, supra* at 717.

The complaint does allege wrongful self-dealing as to the defendants Seaboard Flour Corporation and Mr. Harry Bresky and Mr. Otto Bresky, Jr. The allegations are very sparse with respect to the time charter claim. In all material respects they are quoted above. No fact is alleged that supports the critical conclusion of fact that Flour received better than arm's-length terms, but for present purposes I assume that, under notice pleading rules, this lack of specificity creates no fatal defect in the pleading. Thus, while the facts alleged show that the time contemplated by Section 8106 would have run if the tolling rule implicitly recognized by *Bokat* has no application, the complaint also pleads facts that,

if true, establish at least the predicate (wrongful self-dealing by a fiduciary) for the application of that tolling principle.

But in no event do the pleadings or the record contain sufficient admissions or undisputed facts to permit the court to rule dispositively on the applicability or not of the fiduciary tolling principle at this time.

Since I believe at this stage of the proceeding that plaintiff now has the burden to plead and prove facts that will qualify his case for the tolling principle, I conclude that the better practice would be to dismiss this claim with leave to file an amended complaint within sixty days. *See generally Annot. Limitations—Mode of Raising Defense*, 61 A.L.R.2d 300, 312;[7] 51 Am.Jur. 2d, Limitations § 464 (1970).

Since matters relating to when plaintiff learned of the existence of the time charter, when he learned or should have learned of the relationship that the parties to it bore to each other; when he had notice of facts concerning possible unfairness of the terms; and the reasonable steps he took to oversee his investment, are matters within plaintiff's knowledge further discovery in aid of drafting an amended complaint is inappropriate. Thus the request for a commission to take Mr. Robohm's deposition will be denied at this time.

Defendant shall submit a form of order consistent with the foregoing on notice.

---

7. The annotation states in pertinent part:
   Most of the cases noted [above] ... contemplate that [a] demurrer will be sustained if it appears that the action was commenced after the statutory period had run, and that it is not necessary that it also show, in the first instance, that none of the possible exceptions to the statute are applicable, the burden being on the plaintiff to raise these exceptions if he wishes to rely thereto. *Id.* § 6.