709 S.E.2d 114

Brian P. MENEZES, Respondent,

v.

WL ROSS & CO. LLC, Wilbur L. Ross, Jr., Michael J. Gibbons, David H. Storper, David L. Wax, Joseph L. Gorga, Stephen B. Duerk, WLR Recovery Fund II, L.P., WLR Recovery Fund III, L.P., WLR Recovery Associates II LLC, and WLR Recovery Associates III LLC, Appellants.

No. 4810.

Court of Appeals of South Carolina.

Heard Oct. 6, 2010.

Decided March 23, 2011.

Rehearing Denied June 1, 2011.

H. Sam Mabry, III, Charles M. Sprinkle, III, and James Derrick Quattlebaum, all of Greenville; Michael J. McConnell and Joseph E. Finley, of Atlanta, Georgia and N. Scott Fletcher, of Houston, TX, for Appellants.

William D. Herlong, of Greenville, for Respondent.

KONDUROS, J.

W.L. Ross & Co., LLC (WLR) and several of its board members (Appellants)[1] appeal the circuit court's striking of two of their defenses and dismissal of their counterclaim in the direct shareholder lawsuit filed by Brian Menezes. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Safety Components International, Inc. (SCI) was a publicly traded Delaware corporation with its headquarters in South

---

1. Stephen B. Duerk was not a member of the board but was president of SCI and executed the merger agreement on its behalf.

Carolina. SCI was in the business of designing and manufacturing airbag fabric and airbag cushions. From 1999 to 2006, Menezes was employed by SCI as Chief Financial Officer, and for a time, interim Chief Executive Officer. He was terminated from his employment with SCI in June of 2006 but remained a shareholder. Menezes sued SCI to recover additional severance pay he alleged he was due and a "change of control" bonus included in his employment contract.

While Menezes's employment lawsuit was proceeding, SCI entered into discussions with the former International Textile Group, Inc. (FITG), a privately held Delaware corporation headquartered in North Carolina, about a possible merger.[2] WLR, an investment firm, owned shares in both SCI and FITG, either directly or indirectly through affiliate entities.

On August 29, 2006, the SCI board of directors approved the merger agreement between SCI and FITG. The merger agreement provided that FITG would merge into SCI and that SCI's certificate of incorporation would be amended to reflect the new combined entity. FITG shareholders would receive one share of SCI stock for every 1.4379 shares of FITG stock surrendered.[3] The terms of the merger were made public via a press release and the filing of a Form 8–K with the Securities and Exchange Commission (SEC) on August 30 and again on September 1, when a preliminary Joint Proxy Statement/Prospectus was filed with the SEC. A final Proxy Statement was mailed to stockholders on September 25, 2006. According to the Proxy Statement, FITG stockholders needed to take no action to effect the merger as a majority of stockholders had approved it in writing contemporaneous with the signing of the merger agreement. The Proxy Statement also indicated "no action by the stockholders of SCI is required to approve the merger agreement or to consummate the merger." SCI stockholders did need to satisfy a condition precedent by agreeing to amend the certificate of incorpo-

---

2. FITG refers to International Textile Group prior to the merger with SCI. After the merger, the newly formed entity took the name International Textile Group.

3. According to Menezes's complaint, this exchange ratio had the effect of significantly diluting SCI stockholders' ownership in the newly formed entity.

ration to reflect the existence of the newly formed entity and by re-electing five of the current board members. However, according to the Proxy Statement, "stockholders of SCI holding approximately 75.6% of SCI's outstanding common stock have indicated that they intend to vote to adopt the amended and re-instated certificate of incorporation and to elect the directors nominated for re-election. Approval of the matters to be voted on at the 2006 Annual Meeting is therefore assured."

On September 28, 2006, in exchange for payments totaling approximately $575,000, Menezes signed a Settlement Agreement and Release of All Claims (the Release) to settle the employment lawsuit. The Release stated Menezes agreed to "release, acquit and forever discharge" defendants of:

> Any and all manner of actions, causes of action, suits, claims, setoffs, debts, compensation, salary, benefits, sums of money, accounts, covenants, trespasses, damages, judgments and demands whatsoever, in law or in equity, whether known or unknown, liquidated, contingent, absolute, or otherwise, which plaintiff either has had or now has against the Released Parties for or related to any matter or thing whatsoever from the beginning of time up to and including the date of execution hereof. It is [p]laintiff's intention to release all rights and claims that he may lawfully release.

The Release specifically barred Menezes from bringing "any claim based upon or as an owner of any stock or interest ... arising prior to the execution" of the Release and from pursuing any claims "made or which may have been made" in the employment lawsuit.[4] On October 20, 2006, the merger between SCI and FITG was completed in that all pre-conditions were either satisfied or waived.

Menezes brought this lawsuit in 2008 alleging breaches of fiduciary duties on the part of the Appellants in the following particulars:

---

4. Appellants argued to the circuit court that Menezes could have brought his shareholder claim in the employment lawsuit. Menezes provided opposing counsel with a draft amended complaint in the employment lawsuit. That amended complaint contains an allegation, although stricken through, that the proposed merger agreement was made on unfair terms.

(a) by proposing the [m]erger and then allowing it to close notwithstanding the financial condition of FITG;

(b) by approving the [m]erger on terms which gave 65% ownership to the FITG stockholders and diluted the minority shareholders to 35%, or at all [sic];

(c) by not providing accurate and complete information regarding FITG ... or ensuring that such information was provided to them;

(d) to the extent any one of them was not aware of the financial situation of FITG, by failing to learn of the financial situation of FITG and failing to take it into account or see that it was taken into account with regard to the [m]erger;

(e) by failing to ensure that proper due diligence was conducted on behalf of SCI or FITG;

(f) by allowing the representation at the [m]erger closing that MAC [5] Clause condition was satisfied;

(g) by failing to call off or renegotiate the [m]erger (or cause it to be called off or renegotiated) because of the financial condition of FITG;

(i)[sic] by allowing the debt previously held by FITG to be transferred to Combined Company and/or by allowing that debt to be converted into preferred stock;

(j)[sic] by allowing or causing the renegotiation [of] the SCI's credit facility and/or obtaining $100 million of additional preferred stock in connection therewith; and/or

(k)[sic] by otherwise failing to protect the interests of the minority stockholders of SCI.

Appellants answered, relying on the Release as an affirmative defense to Menezes's claims and counterclaiming for breach of the Release.[6] Appellants also moved to dismiss Menezes's complaint or in the alternative for summary judgment arguing the Release barred the claims as a matter of law. Menezes filed a motion to dismiss Appellants' counterclaims. The circuit court concluded Menezes's breach of fiduciary duty claim accrued at the time the merger was

---

5. MAC stands for materially adverse changes.

6. Stephen Duerk filed an individual answer but asserts the same positions as all Appellants.

completed in October 2006, meaning the claims in this lawsuit were not barred by the Release. The circuit court therefore denied Appellants' motion to dismiss or for summary judgment, dismissed Appellants' counterclaim, and struck Appellants' defenses related to the Release. Appellants filed a motion to reconsider with the circuit court and that motion was denied. This appeal followed.[7]

## LAW/ANALYSIS

Appellants contend the circuit court erred in dismissing their counterclaim and striking their affirmative defenses relating to the Release because Menezes's claim could not have accrued prior to the closing of the merger. They argue the circuit court's reliance on certain Delaware cases is misplaced in light of more recent case law and the facts of this case. We agree.

■ "[U]pon the court's own initiative, at any time the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Rule 12(f), SCRCP. "The question [on a motion to dismiss a counterclaim] is whether in the light most favorable to the complainant, and with every doubt resolved on his behalf, the counterclaim states any valid claim for relief." *Charleston Cnty. Sch. Dist. v. Laidlaw Transit, Inc.*, 348 S.C. 420, 424, 559 S.E.2d 362, 364 (Ct.App.2001).

■ The circuit court's order frames the question before us narrowly: Could Menezes's claim have only accrued after completion of the merger? Neither party has disputed that

___

7. Appellants then filed an appeal with this court requesting review of the entire circuit court's order. Menezes filed a motion to dismiss the appeal arguing the order was interlocutory. A single judge denied the motion but limited appellate review to the dismissal of Appellants' counterclaims and the striking of their affirmative defenses citing section 14-3-330(2)(c) of the South Carolina Code (1977). Appellants filed a petition for rehearing of this ruling, arguing the single issue on appeal (accrual of the breach of fiduciary duty claim) would determine all the points addressed in the circuit court's order. Ultimately a three-judge panel of this court affirmed the single judge's ruling limiting appellate review to the circuit court's dismissal of Appellants' counterclaims and the striking of Appellants' defenses. Therefore, we limit our discussion to those issues.

Delaware law controls the question of the accrual date as claims concerning the fiduciary duties of corporate officers is governed by the state of incorporation. *See* Restatement (First) of Conflicts of Laws § 187 (1934) ("[T]he existence and extent of the liability of shareholders, officers, or directors of a corporation ... is determined by the law of the state of incorporation."). "Generally, the rights and obligations of stockholders, including the relative rights of stockholders as respects the corporation itself, are determined and controlled by the law of the state of incorporation." 18 Am.Jur.2d *Corporations* § 21. South Carolina courts generally follow the traditional choice of law rules as stated in the Restatement of Conflicts of Laws. *See McDaniel v. McDaniel,* 243 S.C. 286, 292, 133 S.E.2d 809, 813 (1963).

The circuit court cites four Delaware cases in its order for the proposition that the claim accrued no earlier than the closing of the merger.[8] The first case cited is *Kaufman v. Albin,* 447 A.2d 761 (Del.Ch.1982). In *Kaufman,* a shareholder filed a derivative suit alleging waste of corporate assets by the corporation's board of directors. *Id.* at 761–62. On August 22, 1977, the board voted to accept and recommend a tender offer by another business to purchase a majority of the corporation's stock. *Id.* at 762. The defendants argued their alleged misdeeds relating to the transaction all occurred prior to September 1, 1977, when a statute affecting service of corporate officers took effect. *Id.* at 763. If the claim accrued before September 1, the complaint would be dismissed for ineffective service; if afterwards, the claims would go forward. In determining the plaintiff's claims accrued after September 1, the court noted:

> After August 22, the tender offer still had to be commenced and [the corporation's] stockholders had to be advised that the directors ... recommended that the tender offer be accepted. This was done on September 12, 1977. [The

---

8. Appellants raised to the circuit court at the hearing and in their motion for reconsideration whether Menezes's claim "may have been made" (under subparagraph 8 of the Release) in the employment lawsuit. The circuit court does not specifically address this point in its order. However, whether or not the claim may have been brought would seem to turn on whether or not the claim had accrued. Therefore, we believe that argument is subsumed in the accrual analysis.

purchasing company] also had available many options which would have enabled it to terminate the tender offer if certain events took place before October 3, 1977. Even more importantly, the tender offer was contingent upon it being accepted by the tendering of at least 52% of the outstanding shares of stock.

*Id.* at 763–64.

The court then quoted from the preeminent treatise in Delaware corporate law. "In Folk, *The Delaware General Corporation Law*, 487 (1967) it is stated: 'Accordingly, the circumstances of the case will determine whether the transaction is executed or continuing. If the action complained of requires stockholder approval, the transaction is not considered complete until the stockholders have approved it.' " *Kaufman*, 447 A.2d at 764.

The *Kaufman* court further relied on the case of *Lavine v. Gulf Coast Leaseholds, Inc.*, 122 A.2d 550 (Del.Ch.1956), for the proposition that when "exchanges of stock are contingent upon shareholder approval, the transaction is not completed until the shareholder vote takes place." [9] *Kaufman*, 447 A.2d at 764. The court concluded the transaction in *Kaufman* commenced on August 22, but was not consummated until the close of the tender offer on October 3. *Id.* "The alleged wrong was therefore a continuing wrong and any cause of action attacking it arose or accrued" after September 1, 1977. *Id.*

However, more recent case law suggests in a standing to sue case, the courts are looking to the date of the wrong for purposes of determining accrual as opposed to the date of shareholder approval. *See Dieter v. Prime Computer, Inc.*, 681 A.2d 1068, 1072 (Del.Ch.1996) (finding plaintiff lacked standing to be class representative because "[t]he challenged transaction is [the Board's] approval of the Merger. The alleged breach of fiduciary duty occurred at the time the Board approved the Merger Agreement.... It is not the Merger that constitutes the wrongful act of which Plaintiffs

9. *Lavine* was a shareholder standing case as are many of the cases discussed herein. In *Lavine*, the issue was whether the plaintiff had standing to sue for breach of fiduciary duty relating to a merger when plaintiff purchased shares after the board's approval of the merger and the announcement of its terms but before the final shareholder vote. *Id.* at 550–51.

complain; it is the 'fixing of the terms of the transaction.' ") (quoting *Brown v. Automated Mktg. Sys., Inc.*, No. 6715, 1982 WL 8782 at *2 (Del.Ch.1982)); *see also In re Beatrice Co.*, Nos. 155 and 156, 1987 WL 36708 at *3 (Del.1987) ("In the case of a proposed merger, the plaintiff must have been a stockholder at the time the terms of the merger were agreed upon because it is the terms of the merger, rather than the technicality of its consummation, which are challenged."); *FMC Corp. v. R.P. Scherer Corp.*, No. 6889, 1982 WL 17888 at *2 (Del.Ch.1982) (relying on *Brown* to find plaintiff lacked standing to sue when she purchased stock after board's approval of supermajority anti-takeover provisions and announcement of merger terms but before shareholder approval of those provisions).

Additionally, *Kaufman* relies on *Folk* as it read in 1967. As Appellants point out, *Folk* has been amended, and the relevant section now states:

> Generally, the determinative issue is when the specific acts of alleged wrong doing occurred, and not when their effect is felt. Therefore, the circumstances of the case will determine whether the transaction is executed or continuing. For instance, an offer made by the corporation to certain of its stockholders to exchange one class of stock for another, which was specifically conditioned on approval by the corporation's other stockholders, was held not be completed until stockholder approval was obtained. On the other hand, both a proposed merger and a proposed supermajority voting provision have been held to be consummated when their terms were fixed and announced by the board of directors, and not to be continuing transaction up to the time of stockholder approval.

2 Edward P. Welch et al., *Folk on the Delaware General Corporation Law: Fundamentals* § 327.3.2 (2010) (footnotes omitted).

The next case relied upon by the circuit court is *Dofflemyer v. W.F. Hall Printing Co.*, 558 F.Supp. 372 (D.Del.1983). In *Dofflemyer*, the plaintiffs, former shareholders, filed a derivative action alleging various directors breached their fiduciary duties in relation to orchestrating a merger. *Id.* at 375. The plaintiffs alleged the directors procured a faulty investment

opinion, maneuvered to avoid a supermajority provision in the by-laws, and issued a false and misleading proxy statement. *Id.* at 379. The court, in determining when the statute of limitations began to run on these claims stated: "The plaintiffs could not have sued for damages until the merger was actually accomplished—until that time, they had suffered no injury by the defendants' acts." *Id.* The court relied primarily on *Kaufman* in its analysis, but nowhere in *Kaufman* is the issue of money damages discussed.

More recent cases that address the requirement of damages prior to bringing suit seem out of step with *Dofflemyer.* In *Albert v. Alex Brown Management Services, Inc.*, No. 762–N, 2005 WL 1594085, *18 (Del.Ch.2005),[10] plaintiffs, limited partners in an investment fund, sued managers for various breaches of fiduciary duties including "unhedging" their funds and exposing them to more financial risk. The plaintiffs waited to sue while the stocks were rising and then sued for damages upon their fall. In finding plaintiffs' complaints were untimely, the court stated:

> The law in Delaware is crystal clear that a claim accrues as soon as the wrongful act occurs. This is so because the plaintiffs were harmed as soon as the alleged wrongful acts occurred. Whether or not the plaintiffs could have sued for damages is not dispositive as to whether the claim accrued, since, as soon as the alleged wrongful act occurred, the plaintiffs could have sought injunctive relief.

*Id.*

This reasoning is evident in other cases as well. *See In re SunGard Data Sys., Inc.*, No. 1221–N, 2005 WL 1653975 at *2 (Del.Ch.2005) ("[T]he optimal time to bring a disclosure claim in connection with a proposed merger, or in a like context where the company requests shareholder action or approval is before the stockholder vote is taken and the deal closes."); *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del.Ch.1993) ("Any such wrong occurred at the time that enforceable legal rights against Seaboard were created. Suit could have been brought immediately thereafter to rescind the contract and for nominal damages which are traditionally available in contract actions. Complete and adequate relief, if justified, could be

---

10. *Albert* is a statute of limitations case.

shaped immediately or at any point thereafter."); *see also Seidel v. Lee,* 954 F.Supp. 810, 816 (D.Del.1996) (citing *Dofflemyer* parenthetically for the proposition "fiduciary duty claim accrues when [the] breach is accomplished").

We next turn our attention to *Baron v. Allied Artists Pictures Corp.,* 717 F.2d 105 (3rd Cir.1983), also cited by the circuit court. *Baron* involved the statute of limitations relating to a violation of SEC regulations for issuing a misleading proxy statement. *Id.* at 106. There, the court concluded the plaintiff's cause of action for damages resulting from a breach of fiduciary duty/misleading proxy statement did not accrue until the merger was accomplished and a suit for damages could be successfully maintained. *Id.* at 108–09. However, the reasoning in that case has been superseded by statute and now is arguably in favor of finding a cause of action accrues at the time of the wrongdoing, not at the time the merger closes. *See In re Exxon Mobil Corp.,* 387 F.Supp.2d 407, 421 (D.N.J. 2005) ("*Baron* pre-dates [the] Sarbanes–Oxley [Act of 2002] and the decisions of the courts in this Circuit which have held that actions under Sections 10(b) and 14(a) arise on the date that the allegedly false or misleading statement underlying the claims was made.").

Finally, we examine *In re Coca–Cola Enterprises, Inc.,* No.1927–CC, 2007 WL 3122370 (Del.Ch.2007), *aff'd, International Brotherhood Teamsters v. Coca–Cola,* No. 601,2007, 2008 WL 2484587 (Del.2008). In that case, disgruntled shareholders of Coca–Cola's biggest bottler claimed breach of fiduciary duty by its board members. *Id.* at *1. The plaintiffs claimed Coca–Cola was essentially controlling plaintiffs' business, for Coca–Cola's profit and to plaintiffs' detriment, and plaintiffs' board was allowing this to happen. *Id.* The parties had entered into a contract in 1986 that gave Coca–Cola the authority to do the offensive acts. *Id.* Plaintiffs brought suit in 2006, alleging damages from specific acts that occurred under the contract in 2002 and 2004. *Id.* at *5. The court, in determining whether plaintiffs' claims were barred by the statute of limitations or laches concluded: "Under Delaware law, a plaintiff's cause of action accrues at the moment of the wrongful act—not when the harmful effects of the act are felt—even if the plaintiff is unaware of the wrong." *Id.* Plaintiffs' claims were dismissed as time-barred because "[t]he

actions challenged in the amended complaint represent the manifestation of the bargain struck in 1986. . . ." *Id.* at *6.

In reaching this conclusion, the *Coca–Cola* court relied on *Kahn* wherein the plaintiff filed a derivative action against directors and the corporation relating to transactions carried out under the terms of a time charter agreement. The court stated: "[T]he 'continuing wrong' is performance of a contract. . . . So long as the time charter is not rescinded, the payments it calls for are legal obligations, not wrongs." *Kahn,* 625 A.2d at 272. Any wrong occurred at the time "enforceable legal rights against Seaboard were created." *Id.* at 271.

Another oft-cited case is *Elster v. American Airlines,* 100 A.2d 219 (Del.Ch.1953). Presented with a similar situation, the court explained:

Assuming that the individual defendants did wrong to the Corporation by entering into the contract, it does not follow that they committed any wrong in carrying out the contract once it had been made. Indeed, had they not done so, the corporation would presumably have been subject to liability for breach of contract.

*Id.* at 224 (quoting *Levitan v. Stout,* 97 F.Supp. 105, 119 (W.D.Ky.1951)).

After reviewing the facts of the case *sub judice* and all the relevant case law, we conclude the circuit court's reliance on the four cases cited above was misplaced.

*Kaufman* relies heavily on *Lavine,* which was a case involving the plaintiff's standing to bring suit. As discussed, more recent standing cases indicate a claim accrues at the time of the wrongdoing by the fiduciary, not necessarily at the time a merger closes. Furthermore, *Kaufman* did not involve a merger but a tender offer and the court indicated a claim does not accrue until shareholders approve the action if shareholder approval is required. In Menezes's case, according to the Proxy Statement, FITG stockholders needed to take no action to effect the merger as a majority of stockholders had approved it in writing contemporaneous with the signing of the merger agreement. Notably, the Proxy Statement also said *"no action by the stockholders of SCI is required to approve the merger agreement or to consummate the merger."* (empha-

sis added). SCI stockholders did need to satisfy a condition precedent by agreeing to amend the certificate of incorporation to reflect the existence of the newly formed entity and by reelecting five of the current board members. However, according to the Proxy Statement, "stockholders of SCI holding approximately 75.6% of SCI's outstanding common stock have indicated that they intend to vote to adopt the amended and re-instated certificate of incorporation and to elect the directors nominated for re-election. Approval of the matters to be voted on at the 2006 Annual Meeting is therefore assured." Menezes acknowledged in his complaint that the closing of the merger was "merely a formality." In light of recent case law indicating the date of the wrong is the relevant time and because *Kaufman* is not factually on all fours with this case, *Kaufman* does not dictate a finding Menezes's claim could have accrued only at the time of the merger's consummation.

*Dofflemyer* seems out of step with more recent case law on fiduciary duty claims because those cases indicate a claim may be brought prior to the incurring of money damages in the form of a request for injunctive relief. Menezes could have brought a claim for injunctive relief prior to the signing of the Release, and this thought was at least contemplated as evidenced by the inclusion of such an allegation in his draft amended complaint given to opposing counsel in the employment litigation. Menezes's remedy, money damages, may have been different, but the claim, breach of fiduciary duty, would be the same.

Finally, we do not believe the "legally enforceable rights" language in *Kahn* and *Coca–Cola* necessitate a finding that Menezes's claim accrued after the merger. Once the merger agreement was signed, SCI and FITG had legally enforceable rights against each other to proceed with all aspects of the merger agreement in good faith. If they did not, they would be in breach of the agreement and subject to suit. More importantly, once the merger agreement was signed, Menezes, as a shareholder, had a legally enforceable right to enjoin the merger from being consummated.

For all of the foregoing reasons, the circuit court's reliance on the cited cases was erroneous. Because Menezes's claim

could have arisen prior to the closing of the merger, the Appellants' defenses relating to the Release were not insufficient. Additionally, their counterclaim arising out of the Release does not, resolving all doubts in their favor, fail to state a valid claim for relief. Consequently, it was error for the circuit court to dismiss Appellants' defenses and counterclaim relating to the Release. The decision of the circuit court is therefore

**REVERSED AND REMANDED.**

WILLIAMS, J., concurs.

PIEPER, J., concurs in a separate opinion.

I concur in the decision to reverse and remand. However, I write separately because I would like to address the combination of Menezes's ten claims for breach of fiduciary duty into one claim by the circuit court.

Menezes brought this lawsuit in 2008 alleging breach of fiduciary duty on the part of the Appellants in all of the following particulars:

(a) by proposing the [m]erger and then allowing it to close notwithstanding the financial condition of FITG;

(b) by approving the [m]erger on terms which gave 65% ownership to the FITG stockholders and diluted the minority shareholders to 35%, or at all [sic];

(c) by not providing accurate and complete information regarding FITG . . . or ensuring that such information was provided to them;

(d) to the extent any one of them was not aware of the financial situation of FITG, by failing to learn of the financial situation of FITG and failing to take it into account or see that it was taken into account with regard to the [m]erger;

(e) by failing to ensure that proper due diligence was conducted on behalf of SCI or FITG;

(f) by allowing the representation at the [m]erger closing that MAC Clause condition was satisfied;

(g) by failing to call off or renegotiate the [m]erger (or cause it to be called off or renegotiated) because of the financial condition of FITG;

(i) [sic] by allowing the debt previously held by FITG to be transferred to Combined Company and/or by allowing that debt to be converted into preferred stock;

(j) [sic] by allowing or causing the renegotiation [of] the SCI's credit facility and/or obtaining $100 million of additional preferred stock in connection therewith; and/or

(k) [sic] by otherwise failing to protect the interests of the minority stockholders of SCI.

The circuit court ruled that the breach of fiduciary duty claims could not have arisen prior to the closing of the merger. Appellants neither argued that the claims should be considered separately, nor asked the court to alter or amend its ruling on the issue. Thus, I would find the question of whether or not the court erred in considering Menezes's claims in combination is not preserved for appellate review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76–77, 497 S.E.2d 731, 733–34 (1998) (finding an issue must have been raised to the trial court in order to be preserved for appellate review and holding post trial motions are necessary to preserve issues that were raised to the trial court but not ruled upon).

Despite this preservation concern, and in light of the reversal and remand of the case by the majority opinion, I note some of the claims could have arisen prior to the closing of the merger and others could have arisen after the closing of the merger. On August 29, 2006, the SCI board of directors approved the merger agreement between SCI and FITG. On September 28, 2006, in exchange for payments totaling approximately $575,000, Menezes signed a Settlement Agreement and Release of All Claims to settle the claims involved in the employment lawsuit. Finally, on October 20, 2006, the merger between SCI and FITG was completed and all preconditions were either satisfied or waived. Importantly, we should recognize the fact that any claims arising between the signing of the release on September 28, 2006, and the finalizing of the merger on October 20, 2006, were valid claims. Furthermore, by analyzing each of Menezes's claims independently of one another, as opposed to combining them, some of the claims may be barred by Menezes's release whereas others may not be barred. Although I agree with the majority in distinguishing the cases relied upon by the circuit court,

I would find the cases nonetheless shed some light on the limiting nature of combining Menezes's ten claims for breach of fiduciary duty into one claim. Therefore, on remand, even though the court did not do so initially, I would urge the court to break down the acts alleged by Menezes separately, as one or more acts could be deemed a separate breach of fiduciary duty based on when each act occurred.