[931 NYS2d 592]

JOHN J. SHALAM, Respondent, v KPMG LLP et al., Defendants, BAYERISCHE HYPO-UND VEREINSBANK AG et al., Appellants.

First Department, October 27, 2011

## APPEARANCES OF COUNSEL

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Mark W. Lerner, Mark P. Ressler* and *Jon Avins* of counsel), for appellants.

*Fensterstock & Partners LLP*, New York City (*Blair Courtney Fensterstock, Eugene D. Kublanovsky, Allison M. Charles* and *Michael T. Phillips, II* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.

Plaintiff John J. Shalam paid $3.85 million to participate in a tax shelter, on the recommendation of a financial advisor, in order to avoid paying taxes on capital gains of approximately $50 million. After the Internal Revenue Service (IRS) disallowed the scheme, plaintiff claimed he had been defrauded by defendants into believing that the scheme was legal. Based on what plaintiff admittedly knew and what he should have known, we hold that he has no viable claim of fraud, because he cannot establish reasonable reliance on the claimed misrepresentations or omissions.

The complex tax avoidance structure at issue, known as "Bond Linked Issue Premium Structure," or BLIPS, was created, orchestrated and operated by defendants. According to the complaint, between 1999 and 2000, defendants solicited the participation in BLIPS of hundreds of taxpayers, including plaintiff. In April 2000, facing the prospect of having to pay taxes on capital gains of approximately $50 million he earned as a result of a public offering of securities for a company he founded and owned, plaintiff decided to participate in BLIPS so that he could claim capital losses to offset those capital gains.

Plaintiff's federal tax return for the year 2000 claimed $57.8 million in BLIPS-generated losses; his 2001 federal tax return claimed a carry-over deduction of $9.9 million in BLIPS losses.

In March 2002, plaintiff received a letter informing him of an IRS voluntary disclosure program in which taxpayers who reported their participation in questionable tax shelters were offered protection from the imposition of penalties "if an underpayment of tax attributable to the questionable item [was]

found upon audit." Plaintiff disclosed to the IRS his participation in BLIPS, and, in 2004, the IRS disallowed his deduction of losses from BLIPS. Plaintiff then entered into a negotiated agreement with the IRS to pay additional federal taxes and interest.

Plaintiff sued all the parties that participated in the creation, orchestration, or operation of BLIPS, claiming as losses the fee he paid to BLIPS and the tax deficiencies and interest he was later assessed by the IRS. It is plaintiff's position that, despite his business degree, he had no education or experience in tax law, and therefore was entitled to, and did, rely on representations that the BLIPS structure was lawful. He says that if he had been told the truth, he would not have invested any money in BLIPS and would have pursued other ventures instead.

This appeal concerns a motion by defendants Bayerische Hypo-und Vereinsbank AG and its related entities (collectively, HVB) for summary judgment dismissing the complaint as against them, based on the contention that, in view of plaintiff's admitted knowledge at the time he chose to participate in BLIPS, he cannot establish reasonable reliance on any misrepresentations regarding the lawfulness of the BLIPS tax avoidance structure. The motion court denied the motion, holding that HVB's prior admissions of wrongdoing precluded any finding as a matter of law that it did not participate in a civil conspiracy to defraud plaintiff. We now reverse.

To be entitled to proceed with his fraud claim against HVB, plaintiff must prove not only that HVB made misrepresentations or omissions of fact for the purpose of inducing him to act in reliance on them, but also that his reliance was justifiable (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). Based on plaintiff's own statements and admissions, we find as a matter of law that he cannot prove justifiable reliance on any claimed assurances either that the tax shelter was legal or that it was more likely than not to be allowed by the IRS.

The "Deferred Prosecution Agreement" in which HVB admitted to participating in fraudulent tax shelters designed to defraud the United States is of no avail to plaintiff. While it certainly establishes that HVB used BLIPS to perpetrate frauds *on the IRS*, earning enormous fees from participants such as plaintiff in the process, HVB's admissions do not serve to demonstrate that plaintiff was an unwitting victim of the fraud.

In fact, the information that plaintiff *acknowledged* possessing at the time, along with information contained in documents

in his possession, conclusively establish that he knew or should have known that he was participating in a scheme of doubtful legality. During his deposition, plaintiff acknowledged that he understood that BLIPS was not an investment, but strictly a tax avoidance strategy, an artificial transaction to create paper losses against which he could offset his capital gains so as to avoid paying taxes on those gains. Much paperwork was generated, including loan documents that required his signature and that reflected purported loans that were not actually made. From these documents plaintiff either knew or should have known that an appearance of investment was being created to give the structure the appearance of legitimacy.

Plaintiff also acknowledged being informed, and understanding, that the best possible scenario for him would be one in which the IRS did not examine his tax returns. Indeed, he was specifically told by defendant KPMG that the losses created by BLIPS would be disguised in the back of his tax return to minimize the chance that the IRS would discover them. Furthermore, it was his understanding that if the IRS "discovered" or "picked up" on BLIPS, he could negotiate a settlement that "would probably be a lot less than the amount of tax that [he] would have to pay." Consequently, even if HVB had known and failed to specifically explain to plaintiff that the BLIPS structure was an illegal tax shelter under IRS rules, plaintiff was in possession of sufficient information to preclude him from accepting without question any representations that BLIPS deductions would be allowed by the IRS.

Plaintiff's testimony also makes clear that he understood that the official opinion letter with which he was provided was not a true assessment of the legality of the tax shelter. The letter stated that it was more likely than not that claimed losses from BLIPS would be allowed, and all parties, *including plaintiff*, understood that its purpose was to protect participants from incurring any penalties in the event that the BLIPS' true construct was uncovered by the IRS. As this Court has had occasion to observe, opinion letters that state that the IRS will "more likely than not" accept a tax shelter "put[ ] an ordinary person on notice that the odds in favor of legality could be as slim as 51% to 49%" (*see Gaslow v QA Invs. LLC*, 36 AD3d 286, 291 [1st Dept 2006]). Where the odds in favor of legality are virtually equivalent to the odds in favor of illegality, even a taxpayer with less business experience than plaintiff will apprehend the substantial risk that his tax avoidance strategy will not pass muster with the IRS.

While the complexities of the BLIPS structure may have limited plaintiff's understanding of it, and while some information about BLIPS may have been unavailable to participants absent extraordinary efforts, nevertheless, plaintiff understood enough to know that BLIPS was a scheme to create artificial losses and that the IRS, if it investigated, might very well disallow deduction of those losses. Plaintiff was presented with information sufficient to cause him to doubt the propriety of the BLIPS scheme for tax avoidance purposes, and willfully blinded himself to that information by failing to ask questions, pay attention to details, or read the documents he signed. Thus, he cannot demonstrate reasonable reliance.

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), which, insofar as appealed from, denied defendants-appellants' motion for summary judgment dismissing the complaint as against them, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

TOM, J.P., MOSKOWITZ, ACOSTA and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, New York County, reversed, on the law, without costs, and the motion for summary judgment granted. The Clerk is directed to enter judgment accordingly.