# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| KARL C. DYTON, | : | |
| | : | C.A. No.: K25C-06-023 JJC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW G. AHERN, III, | : | |
| JOSEPH W. BENSON, P.A., | : | |
| a Delaware Law Firm, | : | |
| | : | |
| Defendants. | : | |

Submitted: September 30, 2025
Decided:　November 19, 2025

## OPINION & ORDER

Karl C. Dyton, Dover, Delaware, *Pro Se Plaintiff*.

Stephanie Emmanuel-De Luna, Esquire and Brett T. Norton, Esquire, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, Delaware, *Attorneys for Defendants Andrew G. Ahern, III and Joseph W. Benson, P.A.*

**CLARK, R.J.**

Plaintiff Karl Dyton sues his former attorney and his attorney's firm for legal malpractice. He contends, in part, that they negligently represented him during an underlying contract suit (the "underlying action" or "underlying suit"). More specifically, he asserts that neither his primary attorney, nor his attorney's firm, took any meaningful action to prosecute the underlying suit and that the Court dismissed the matter because they did not. Mr. Dyton further contends that they failed to communicate with him throughout the case. As a result, he first learned about the dismissal eighteen months later when a friend conducted a Superior Court docket search for him.

Presently, Defendant Andrew G. Ahern, III, and the law firm associated with him, Joseph W. Benson, P.A. (hereinafter, collectively referenced as "Benson"), move to dismiss Mr. Dyton's malpractice complaint under the applicable statute of limitations. Benson's motion turns on the assumption that the statute of limitations accrued when the Court dismissed the underlying suit. Based on that assumption, Benson contends that Mr. Dyton's malpractice suit is barred because he filed it more than three years after that dismissal.

Mr. Dyton counters by relying on four separate doctrines to make his filing timely. They include (1) continuous representation, (2) equitable tolling, (3) the discovery rule, and (4) fraudulent concealment.

Mr. Dyton's reliance on Benson's allegedly continuous representation raises an issue of first decision in Delaware – that is, whether Benson's allegedly continuous negligent representation of him, as an off-shoot of the continuing wrong doctrine, delayed the accrual of his legal malpractice case. For the reasons explained below, the continuous representation doctrine should be applied in a Delaware legal malpractice action as it would be if this were any other continuing tort. Here, Mr. Dyton's cause of action conceivably accrued at some point after the Court dismissed

2

the underlying suit. It is therefore deemed timely under the lens of Superior Court Rule 12(b)(6).

The other three justifications that Mr. Dyton raises are tolling doctrines that have been specifically recognized by Delaware courts. In the end, his complaint supports inferences that one or more could also conceivably make Mr. Dyton's claims timely.

In sum, a more fully developed evidentiary record will be necessary to determine (1) when Mr. Dyton's legal malpractice action accrued, and alternatively (2) whether the filing was timely if the cause of action accrued as early as Benson contends. For that reason and others, Benson's motion to dismiss must be denied.

## I.    BACKGROUND

The following facts are drawn from, or can be reasonably inferred from, Mr. Dyton's complaint and are considered true for purposes of this motion. Mr. Dyton retained Andrew G. Ahern, III, Esquire and the law firm Joseph W. Benson, P.A. to represent him in the underlying action filed in February 2019.[1] There, Mr. Dyton had retained Benson to sue a natural person and a business entity for breach of contract seeking $318,413.47 in damages.[2] Mr. Dyton then paid Benson an unspecified amount to do so.[3]

Benson initially filed a complaint and then an amended complaint in the underlying action.[4] Neither Mr. Ahern nor the firm prosecuted the case further, with one exception.[5] Namely, Benson sought and obtained a default judgment against one of the defendants in a nominal amount without Mr. Dyton's knowledge.[6] The

---

[1] D.I. 1 at ¶ 6; *see also Dyton v. Dyer, et al.*, C.A. No. K19C-02-017 (Del. Super.).
[2] D.I. 1 at ¶ 7.
[3] *Id.* at ¶ 8.
[4] *Id.* at ¶ 14.
[5] *Id.*
[6] *Id.* at ¶¶ 9-10.

3

other defendant remained in the case but Benson failed to prosecute the matter further. As a result, the Court dismissed the entire case pursuant to Superior Court Civil Rule 41(e) on December 14, 2021.[7]

Benson did not notify Mr. Dyton that the Court had dismissed his case, however. Eventually, he discovered the outcome on his own when his friend searched the Superior Court's electronic docket in June 2023.[8] When Mr. Dyton contacted Mr. Ahern in June 2023 to question him about the dismissal, Mr. Ahern exhibited surprise that (1) he or his firm had secured a default judgment against one defendant, and (2) the Court later dismissed the balance of the case.[9] Mr. Ahern promised to investigate these issues and provide Mr. Dyton answers as to why.[10] Importantly, as alleged, neither Mr. Ahern, nor Benson took action to reopen the judgment, follow-up with the Court, or follow-up with Mr. Dyton.[11]

Mr. Dyton then filed this malpractice suit on June 23, 2025. In it, he seeks money damages for Benson's alleged legal malpractice, breach of fiduciary duties, constructive fraud, and negligent misrepresentation.[12] The complaint, when read as

---

[7] *Id.* at ¶ 14.

[8] *Id.* at ¶ 11.

[9] *Id.*

[10] *Id.*

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶¶ 17-35. Benson does not raise the issue of subject matter jurisdiction regarding the breach of fiduciary duty claim or the negligent misrepresentation claim. Both claims will fall under the Court of Chancery's exclusive jurisdiction. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 812 n.13 (Del. 2016) ("Furthermore, the Superior Court lacks jurisdiction over the Policyholders' fiduciary duty claims that they seek to bring as owners of State Farm."); *Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at *4 (Del. Super. Jan. 27, 2016) ("Given the equitable nature of fiduciary duty claims, jurisdiction lies exclusively within the Chancery Court even where the relief sought is purely monetary."); *see also Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *11 (Del. Super. Feb. 15, 2013) ("It is well-settled Delaware law that the Court of Chancery has exclusive jurisdiction over claims of negligence misrepresentation."). Furthermore, to the extent any of these claims are cognizable only in equity, the timeliness question would require application of the doctrine of laches, not the statute of limitations. *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *13 (Del. Ch. Dec. 23, 2008). At this point, however, because (1) the parties have not had the opportunity to address subject

a whole, includes several factual allegations relevant to the date of accrual and possible tolling. Namely, Mr. Dyton alleges that Benson is liable because he failed to prosecute the underlying action, failed to file documents to support his damage claims, failed to request a damages hearing, failed to seek to reopen the judgments, and failed to communicate important developments in the underlying action.[13]

The complaint further alleges that Benson breached various duties owed to Mr. Dyton, the client, such as: (1) to competently prosecute the underlying action, (2) to keep him apprised of developments in the underlying action, and (3) to attempt to reopen the Court's judgment of dismissal.[14] Finally, Mr. Dyton alleges Benson's conduct to be egregious – which could conceivably rise to the level of bad faith – because Benson knowingly hid from him that the Court had entered an inadequate judgment against one defendant and had separately dismissed the claims against the other.[15]

Benson now files a motion to dismiss under the applicable three-year statute of limitations.[16] Benson's arguments center on the assumption that Mr. Dyton's claims accrued when the Court dismissed the underlying action on December 14, 2021. If that was so, and if the statute was not tolled, Mr. Dyton's suit is untimely because he filed it on June 23, 2025.

---

matter jurisdiction because Benson did not raise it, and (2) the Superior Court has clear jurisdiction over the legal malpractice claim, this opinion will address only Benson's statute of limitations defense at law. The Court offers no opinion regarding whether laches would apply to Mr. Dyton's claims in equity. *See Mine Safety Appliances Co. v. AIU Ins. Co.*, 2016 WL 498848, at *12 (Del. Super. Jan. 22, 2016) ("Laches is an equitable defense that is not available in the Superior Court, which is a court of law.").

[13] *Id.* at ¶¶ 17-21.

[14] *Id.* at ¶¶ 23, 24.

[15] *Id.* at ¶¶ 27-31.

[16] D.I.s 6, 14. The two defendants, represented by the same attorneys, filed separate motions with parallel arguments on the statute of limitations. Throughout this decision, the Court treats them as one filing.

Mr. Dyton responds by relying on four doctrines offered to counter Benson's affirmative defense of the statute of limitations. The first doctrine goes to the accrual of the statute. The other three to its tolling. After considering the parties' written submissions, the Court heard oral argument on the motion on September 30, 2025. The Court reserved decision on Benson's motion and this Opinion provides its decision.

## II. STANDARD

When deciding a Rule 12(b)(6) motion, the Court must consider only the complaint, and any documents attached to it.[17] When doing so, it must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. In Delaware, the standard to survive a motion to dismiss is reasonable conceivability.[18] To that end, the Court may not dismiss a claim unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[19]

The Rule 12(b)(6) standard is somewhat nuanced in this case because Benson's motion contends that the applicable statute of limitations bars Mr. Dyton's claims. A bar by a statute of limitations is an affirmative defense. On one hand, a plaintiff is generally not required to plead responses to affirmative defenses in his complaint because they have not yet been raised.[20] Nevertheless, Superior Court Civil Rule 9(f) makes time a material element of an initial pleading if plead. Because "time" may then be material, a Rule 12(b)(6) motion is sometimes the appropriate

---

[17] *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss.").

[18] *Fontana v. CSX Transp., Inc.*, 330 A.3d 967, 975 (Del. Super. 2025).

[19] *Id.*

[20] *See McNair v. Taylor*, 2007 WL 1218681, at *1 n.3 (Del. Super. March 30, 2007) ("[T]he plaintiff is not required to anticipate affirmative defenses in his complaint.").

mechanism to determine if the time for bringing the claim has passed if the time-bar is apparent on the face of the complaint.[21]

The standard to determine whether the applicable statute of limitations bars a plaintiff's claim has three-parts regardless of whether it is raised in a motion to dismiss or motion for summary judgment. In this motion to dismiss, Rule 12(b)(6)'s relaxed lens applies.[22] Here, the Court must evaluate (1) when the cause of action accrued, (2) whether the complaint includes sufficient facts to permit a conceivable inference that a tolling doctrine applies, and (3) if a tolling doctrine applies, when the plaintiff was on inquiry notice.[23]

## III. ANALYSIS

Delaware applies a three-year statute of limitations to legal malpractice claims.[24] Benson's motion turns on the contention that Mr. Dyton's claims accrued when *the Court* dismissed Mr. Dyton's underlying case, December 14, 2021.[25] Assuming that to be the date of accrual, Benson contends that when Mr. Dyton filed his malpractice suit approximately three years and six months after that date, the claims were barred by the statute.

Therefore, the first question the Court must examine is when Mr. Dyton's claim accrued. At this stage of the proceedings, the Court must determine whether the complaint, on its face, (1) affixes the accrual date on the day the Court dismissed the underlying action, or (2) leaves open the potential that Mr. Dyton's cause of

---

[21] *See* 5A Charles A. Wright et al., Federal Practice and Procedure § 1308 (3d ed. 2018) (explaining that Federal Rule of Civil Procedure 9(f), which provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading," was intended to allow resolution of facially evident timeliness issues on a Rule 12(b)(6) motion).
[22] *Winner Acceptance Corp.*, 2008 WL 5352063, at *14.
[23] *Id.*
[24] 10 *Del. C.* § 8106(a); *ISN Software v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020) ("Under 10 *Del. C.* § 8106(a), a legal malpractice claim must be filed within '3 years from the accruing of the cause of such action.'").
[25] D.I. 6 at ¶ 7.

action accrued at some later point. For the reasons to follow, the complaint alleges facts that support an inference of an ongoing attorney-client relationship between the parties that continued past the date of dismissal. The complaint also supports a reasonable inference that Benson's negligence continued after the Court dismissed the underlying suit. As a result, evidentiary context will be necessary to resolve these disputes.

Second, the Court must also independently examine whether the complaint's allegations, when taken as true, support inferences that one or more of the tolling doctrines apply. Further evidentiary context will be necessary to answer that question as well. Ultimately, if Benson is correct about the date of accrual, but the statute was nevertheless tolled for one of these reasons, Mr. Dyton's suit will remain timely on an alternative basis.

Third and finally, tolling ceases when a plaintiff is on inquiry notice of the wrong. As a result, analyzing tolling requires the Court to determine when Mr. Dyton was on inquiry notice of Benson's allegedly wrongful acts. For the reasons to follow, Mr. Dyton is entitled at the pleading stage to an inference that he was not on inquiry notice of Benson's wrongs. Final resolution of this third inquiry must also await a more developed evidentiary record.

### A. The complaint supports an inference that Mr. Dyton's claims conceivably accrued at some point after the Court dismissed the underlying action.

A statute of limitations begins to run when the relevant cause of action accrues.[26] Delaware follows the occurrence rule, which provides that a cause of action accrues "'at the time of the wrongful act, even if the plaintiff is ignorant of

---

[26] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007), *abrogated on other grounds, as recognized by In re Match Grp., Inc. Deriv. Litig.*, 315 A.3d 446, 470 n.157 (Del. 2024).

the cause of action.'"[27] In legal malpractice claims, the "wrongful act" is the alleged malpractice.[28] Here, Benson asserts that Mr. Dyton's cause of action accrued on December 14, 2021, when the Superior Court dismissed the underlying action on its own initiative because no one was prosecuting it.

Benson's contention that the day of dismissal is the only conceivable accrual date incorrectly fixates on the harm caused by the dismissal. In one sense, Benson's mistake is not altogether unreasonable because the alleged wrongful conduct that caused that harm—Benson's alleged failure to prosecute—would have naturally preceded the dismissal. Apart from that, however, the complaint supports a further inference that Benson's wrongful "act" was a *continuing course of negligent conduct* that extended past the Rule 41(e) dismissal. When viewed in that manner, the "wrong" or "occurrence" cannot be pinpointed to a single date if there was continuing negligent conduct.[29] In that way, Mr. Dyton's complaint supports a conceivable inference that the wrongful "act" was a persistent lack of action over the course of many months, as opposed to any discrete act. That, in turn, may alter the accrual date which could make his claims timely.

While Delaware applies the occurrence rule to determine when a cause of action accrues, general tort law and Delaware decisional law have long recognized that ongoing conduct by one tortfeasor can combine to jointly cause harm.[30] That,

---

[27] *ISN Software Corp.*, 226 A.3d at 732 (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)); *see also Isaac v. Politico LLC*, ---A.3d---, 2025 WL 2437093, at *12 (Del. Aug. 25, 2025) (same).

[28] *Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, 2011 WL 743400, at *5 (Del. Super. Feb. 21, 2011).

[29] *See Lebanon Cnty. Emp.'s Ret. Fund v. Collis*, 287 A.3d 1160, 1196 (Del. Ch. 2022) ("Determining a time of accrual is more difficult when the wrongful act is not a singular decision but rather an ongoing series of continual decisions and non-decisions that extend over time.").

[30] *See* Restatement (Second) of Torts § 161 cmt. b (recognizing that an actor's continuing wrongful conduct makes the actor liable for continuing trespass for the entire time during which the wrongful conduct continues); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) (recognizing that hostile work environment claims under Title VII constitute continuing wrongs

9

in turn, requires a nuanced application of the occurrence rule. Namely, when continuing wrongful acts are inextricably intertwined and cannot be parsed into separate wrongdoings, they become one continuous wrong.[31]

As a result, continuing wrongs of this nature require a special application of the occurrence rule. Specifically, fixing accrual at the start of the inextricably intertwined occurrences would perversely incentivize premature suits filed by plaintiffs who may not yet know they were harmed and *may never suffer harm*. As a result, the law has long recognized an adjusted time of accrual in the context of continuing wrongs.

Benson maintains that the accrual date in this case is the day of dismissal and argues that Delaware courts have never specifically applied this doctrine in legal malpractice cases, with the doctrine being referred to as the continuous representation doctrine.[32] Nationally, many courts have recognized the continuous representation doctrine as a claim-specific permutation of the continuous wrong doctrine. Applying the continuous wrong doctrine to legal malpractice actions requires no logical leap. To do so merely provides consistency among torts.

Of note, when recognizing other applications, the Delaware Supreme Court has maintained the requirement that accrual is triggered at the last act of negligence in a negligent course of conduct. In other words, there can be *no delayed accrual* to

_____

that make a suit timely so long as one act comprising the claim occurred within the limitations period).

[31] *See Ewing v. Beck*, 520 A.2d 653, 664-65, 667-68 (Del. 1987) (recognizing but declining to apply the continuing negligent medical treatment doctrine); *see also GI Associates of Delaware, P.A. v. Anderson*, 247 A.3d 674, 680-81 (Del. 2021) (clarifying that Delaware applies the "continuous negligent medical treatment doctrine" which places the focus on the last act in the negligent continuum, and not the last act of treatment).

[32] While Benson's argument that no Delaware decision has applied the continuous wrong doctrine in the legal malpractice context may be correct, the Delaware Superior Court has recognized it as a viable justification on at least one occasion while declining to apply it where there was not one continuous intertwined course of representation. *Began v. Dixon*, 547 A.2d 620, 624 (Del. Super. 1988).

10

the time of merely the last act.[33]  As an example, the Delaware Supreme Court has consistently recognized the viability of the continuing negligent medical care doctrine.[34]  That approach recognizes that, when a medical provider's negligent treatment constitutes one continuing course of action, the statute of limitations accrues when the medical provider performs the last negligent act in that continuing course of treatment.[35]  Similarly, the Court of Chancery has used either a continuing wrong or a separate accrual theory to determine the date of accrual when faced with similar questions.[36]  In those contexts, the causes of action also do not accrue until the last act of the continuing wrong.[37]

Here, there are sufficient facts alleged in the complaint to support an inference that Benson's *negligent* representation in the underlying litigation continued through

---

[33] Most likely, a more appropriate specialized name for this permutation would be the continuous *negligent* representation doctrine.  Here, the Court does not take the liberty of coining a new name for the doctrine but nevertheless recognizes that Delaware law requires the focus to remain on the last inextricably intertwined *negligent* conduct within the continuum.

[34] *See Ewing*, 520 A.2d at 663 (recognizing the continuous negligent medical treatment doctrine).

[35] *Id.* at 664-65.  Note, however, that this doctrine is distinct from the "pristine" continuous treatment doctrine, which the Delaware Supreme Court declined to adopt.  *Id.* at 661.  Under the "pristine" continuous treatment doctrine, "the statute of limitations for a medical malpractice action would begin to run on the last day the plaintiff received treatment from the defendant health care provider for the *same or related condition* which is the subject matter of the Complaint, whether or not negligence continued throughout the entire course of treatment."  *Id.* at 659.  By contrast, the continuous negligent medical treatment applies "[w]hen there is a continuum of negligent medical care related to *a single condition* occasioned by negligence . . . ."  *Id.* at 662.  Thus, it is not enough to simply allege that an attorney committed some type of negligence during the course of the representation.  Rather, the plaintiff must allege a continuing course of negligent conduct that spans that course of representation.  Mr. Dyton's complaint does so by alleging a continuous failure to prosecute the underlying action, and a failure to seek to reopen the judgment after its entry.

[36] *Compare Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *43 (Del. Ch. Apr. 14, 2017) (applying continuing wrong accrual theory to breach of fiduciary duty claim where a defendant private equity firm caused its portfolio company to sell off assets for defendant's benefit and rejecting the argument that each sale of assets constituted a separate wrongful act), *with Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 665-67 (Del. Ch. 2006) (applying separate accrual theory where the challenged contract was entered into thirty years before the complaint was filed, where the defendant directors renewed the contract each year).

[37] *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del. Ch. 1993).

at least June 2023. Namely, as late as June 2023, Mr. Ahern allegedly told Mr. Dyton that he was surprised that (1) a partial default judgment had been entered, and (2) the balance of the case had been dismissed.[38] That conversation and Mr. Ahern's alleged promise to investigate why it happened permits a reasonable inference that Benson's representation in the underlying litigation continued through at least that point. It further supports the inference that Benson's alleged negligence continued through that point. Namely, Mr. Dyton's complaint alleges that Benson negligently breached the duties (1) to discover the dismissal, and (2) to move to reopen the judgment.[39] Such continuing wrongs would have necessarily accrued after the dismissal and can be inferred to have inextricably contributed to bringing about the result – the loss of the litigation.

To this end, Delaware courts routinely grant relief from judgments entered for reasons other than on the merits under "Delaware's strong judicial policy of deciding cases on the merits and giving parties to litigation their day in court."[40] Namely, Delaware's Superior Court Civil Rule 60(b), unlike the federal counterpart, does not specifically limit the time for attempting to reopen a judgment.[41] Consequently, the complaint's allegations regarding Benson's failure to move to reopen the judgment provide a conceivable basis to infer that such a failure was inextricably intertwined with Benson's earlier failures to prosecute the matter. That makes the accrual date conceivably later than December 14, 2021.

Finally, applying the continuing representation doctrine in the legal malpractice context is fair, efficient, and particularly consistent with good public

---

[38] D.I. 1 at ¶ 11.

[39] *Id.* at ¶ 19.

[40] *Verizon Delaware, Inc. v. Baldwin Line Constr. Co., Inc.*, 2004 WL 838610, at *1 (Del. Super. Apr. 13, 2004).

[41] *Compare* Fed. R. Civ. P. 60(c)(1) (setting a "reasonable time limit" for all Rule 60(b) motions and a one-year time limit for motions under Rule 60(b)(1)-(3)), *with* Super. Ct. Civ. R. 60(b) (providing no such outer time limit).

12

policy.  Doing so prevents an adversarial relationship between an attorney and client mid-representation or mid-suit. [42]  Otherwise, clients would feel compelled to prematurely file suit.  In litigation's ebbs and flows there may be missteps that an attorney can remedy and even press to the client's advantage when given the opportunity to do so.

### B. Mr. Dyton's complaint includes facts that permit  a conceivable inference that one or more tolling doctrines apply.

Tolling doctrines operate to suspend the statute of limitations under certain circumstances.  Tolling can either suspend the accrual of the statute of limitations or intermittently suspend its running for a time.[43]  Mr. Dyton contends that three such doctrines apply.

First, Mr. Dyton contends that equitable tolling applies to excuse any potentially late filing. [44]  Equitable tolling suspends the statute of limitations when a plaintiff, through no fault of her own, is prevented from filing a timely claim because of circumstances such as a reliance on a fiduciary's good faith.[45]

Benson argues that the Superior Court cannot apply equitable tolling in this case as a matter of law on jurisdictional grounds.[46]  Granted, Delaware maintains a bifurcated court system where the Court of Chancery has exclusive jurisdiction over equitable claims and the Superior Court has jurisdiction, though not exclusive, over claims at law.[47]

---

[42] *See* 3 Legal Malpractice § 23:44 (2025 ed.) (recognizing that "[t]he purpose of the continuing representation rule is to avoid disrupting the attorney-client relationship unnecessarily. . . . [In some cases], there has not been and may never be an injury").

[43] 51 Am. Jur. 2d *Limitations of Actions* § 150 n.2 (2021).

[44] D.I. 15 at 4.

[45] *Tyson Foods*, 919 A.2d at 585 ("[T]he doctrine of equitable tolling stops the statute from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary.").

[46] D.I. 14 at ¶ 10.

[47] *See Monroe Park v. Metro. Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983) ("Indeed, under article IV, section 7 of the Delaware Constitution, the Superior Court's jurisdiction relates to all civil

Parties have long been recognized as having the right to rely on certain equitable arguments at law, however.[48]  In fact, some historically equitable defenses are explicitly recognized by the Superior Court Civil Rules.  For instance, Superior Court Civil Rule 8(c) includes waiver and estoppel as affirmative defenses – both of which originated in equity.[49]  Nevertheless, not all equitable affirmative defenses are available in the Superior Court.  Specifically, Delaware courts frequently recognize that laches and unclean hands defenses are unavailable at law.[50]  The reason often cited for the distinction is that such defenses answer only equitable claims.[51]  While there may be an *ipse dixit* aspect to that reasoning, it is nevertheless true that (1) where there can be no equitable claim in Superior Court, and (2) where decisional law recognizes that a defense is only available to counter an equitable claim, the Superior Court should not entertain that affirmative defense.

The Court of Chancery discussed this rationale in *XRI Investment Holdings LLC v. Holifield*.[52]  There, the court explained, when exercising supplemental

---

causes at 'common law' while article IV, section 10 and 10 Del. C. § 341, make clear the Court of Chancery's jurisdiction to hear and determine all matters and causes in equity.").

[48] *See XRI Inv. Holdings LLC v. Holifield*, 283 A.3d 581, 637-38 (Del. Ch. 2022) (recognizing that fraud, mistake, waiver, acquiescence, ratification, lack of consideration, discharge of surety, impossibility, unconscionability, duress, estoppel, rescission, ripeness, and mootness are all equitable defenses that can be brought at law or equity), *rev'd on other grounds*, 304 A.3d 896 (Del. 2023).

[49] Super. Ct. Civ. R. 8(c); *see also Avaya, Inc. v. Charter Commc'ns Holding Co., LLC*, 2015 WL 1975814, at *3 (Del. Super. May 1, 2015) (noting that Rule 8 recognizes certain equitable defenses).

[50] *See Sun Life Assurance Co. of Can. v. Wilmington Tr., Nat'l Ass'n.*, 2018 WL 3805740, at *3 (Del. Super. Aug. 9, 2018) ("Further, this Court lacks jurisdiction to consider the laches and unclean hands defenses.  Such equitable claims are reserved for the Court of Chancery."), *rev'd on other grounds*, 294 A.3d 1062, 1079 (Del. 2023), *as revised* (Mar. 21, 2023) ("The Superior Court properly . . . struck [defendant's] equitable defenses . . . ."). *But see Mfrs. & Traders Tr. Co., Wilmington Sav. Fund Soc., FSB v. Washington House Partners, LLC*, 2012 WL 1416003, at *4 (Del. Super. Mar. 22, 2012) ("While the unclean hands doctrine is generally an equitable defense available in the Court of Chancery, this Court is permitted to consider equitable defenses raised by parties.").

[51] *XRI Inv. Holdings LLC*, 283 A.3d at 640.

[52] *Id.* at 628-641 (discussing the availability of an acquiescence defense in actions at law).

jurisdiction over legal claims, that only "equitable defenses that emerged solely as defenses against requests for equitable relief," such as laches and unclean hands, are prohibited in response to legal claims.[53] Otherwise, the court acknowledged that equitable defenses against legal claims remain available in Superior Court and the Court of Chancery.[54]

The most extensive discussion of the migration of many equitable defenses to law was provided by then-Judge Quillen in *USH Ventures v. Global Telesystems Group, Inc.*[55] There, Judge Quillen provided helpful dicta when examining what he recognized to be a thorny question of identifying which traditionally equitable defenses are available in a court of law.[56] Namely, he advocated for Delaware's abandonment of impractical distinctions between affirmative defenses in law and equity in favor of freely entertaining equitable defenses to legal claims.[57] He then identified a long trend of equitable arguments now accepted in the Superior Court. They include fraud, illegality, failure of consideration, payment, discharge of surety, accommodation, and duress, which the court explained had all originated as equitable defenses.[58]

Turning to equitable tolling, the Superior Court has repeatedly recognized the mechanism as an available justification to avoid the bar of statutes of limitations. For instance, in *Van Lake v. Sorin CRM USA, Inc.*, the court assumed the availability

---

[53] *Id.* at 640.

[54] *Id.* at 637-38 ("Most equitable defenses are now available in legal actions as well, even in jurisdictions, such as Delaware, that maintain separate courts of law and equity." (quoting Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 15.01, at 15-3 (2d ed. 2018 & Supp.)).

[55] 796 A.2d 7, 13-20 (Del. Super. 2000).

[56] *Id.* at 19.

[57] *Id.* at 19-20.

[58] *Id.* at 18 (citing James B. Ames, *Specialty Contracts and Equitable Defenses*, 9 Harv. L. Rev. 49 (1896)).

of equitable tolling but declined to apply it on factual grounds.[59]  In other cases, the Superior Court has applied equitable tolling where the plaintiff sought timely relief in the wrong forum or against the wrong entity.[60]  In these cases and others, equitable tolling has been firmly recognized as an available response to a statute of limitations defense.

Turning to application, equitable tolling poses fact-specific questions that can rarely be decided on a motion to dismiss.[61]  There are three contexts where Delaware courts have applied the doctrine: (1) where the defendant misled the plaintiff, (2) where the plaintiff was prevented from asserting their rights in some extraordinary way, and (3) where the plaintiff has timely asserted their rights mistakenly in the wrong forum.[62]

The first of these three categories includes circumstances where a defendant owes a fiduciary relationship to a plaintiff, such as Benson owed Mr. Dyton. Namely,  the attorney-client relationship between Mr. Dyton, the client, and Benson, his attorneys, created a fiduciary relationship.[63]  Equitable tolling, if applied, will suspend the statute from running while Mr. Dyton reasonably relied upon the competence and good faith of his fiduciary.[64]  Tolling will then continue until Mr.

---

[59] 2013 WL 1087583, at *11 (Del. Super. Feb. 15, 2013).

[60] *See, e.g.*, *Lambert v. 24.7 Fitness Studio, LLC*, 2018 WL 2418385, at *5 (Del. Super. May 29, 2018) (finding that equitable tolling applies in the Superior Court where defendant misled plaintiff by giving him incorrect insurance information causing plaintiff to sue the wrong entity); *Owens v. Carman Ford, Inc.*, 2013 WL 5496821, at *2-3 (Del. Super. Sept. 20, 2013) (finding that equitable tolling applied in the Superior Court where plaintiff brought the same claims in the wrong forum before limitations period ran out).

[61] *See Riskin v. Burns*, 2020 WL 7973803, at *16 (Del. Ch. Dec. 31, 2020) ("Generally, whether equitable tolling applies raises a fact-intensive inquiry that is not amenable to a motion to dismiss.").

[62] *Owens*, 2013 WL 5496821, at *3.

[63] Mr. Dyton independently raises a breach of fiduciary claim against Benson.  While the factual allegations that support that claim have some relevance to the issue of equitable tolling, Mr. Dyton's independent breach of fiduciary claim ultimately can only be considered by the Court of Chancery.  That equitable claim is not addressed in this opinion.

[64] *Tyson Foods*, 919 A.2d at 585.

Dyton became "*objectively* aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice."[65] Importantly, no evidence of actual concealment is necessary under this fiduciary-based scenario.[66] The reasoning for this is that fiduciaries should not be permitted to immunize themselves from wrongdoing when they had the duty to prevent the wrongdoing.[67] Finally, in fiduciary-based equitable tolling, while some Delaware courts originally applied a self-dealing criterion to this justification,[68] Delaware courts now forgo the requirement if the fiduciary's actions were taken in bad faith.[69]

In this case, Mr. Dyton pleads sufficient facts to raise an inference that equitable tolling applies. Namely, he alleges breaches of the fiduciary duties owed to him, by Benson, that include the duties of diligence of representation and communication.[70] He further alleges that Benson's state of mind rose to the level of recklessness and wantonness.[71] Specifically, he alleges that "Defendants, in their fiduciary capacity, knowingly and recklessly failed to disclose material facts to Plaintiff regarding the entry of judgment and dismissal."[72] Such allegedly egregious

---

[65] *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009) (quoting *In re Dean Witter P'ship. Litig*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998)).

[66] *Tyson Foods*, 919 A.2d at 585.

[67] *Am. Int'l Grp., Inc.*, 965 A.2d at 813.

[68] *See e.g.*, *Kahn*, 625 A.2d at 276-77; *Litman v. Prudential-Bache Props., Inc.*, 1994 WL 30529, at *3 (Del. Ch. Jan. 14, 1994), *aff'd*, 642 A.2d 837, 1994 WL 144297 (Del. 1994) (ORDER).

[69] *See Lebanon Cnty.*, 287 A.3d at 1219-21 (applying equitable tolling to *Massey* and red-flags claims on the grounds that they involve conscious wrongdoing akin to bad faith rather than requiring self-dealing on the part of the fiduciary); *Ont. Provincial Council of Carpenter's Pension Tr. Fund v. Walton*, 294 A.3d 65, 94-96 (Del. Ch. 2023) (recognizing that equitable tolling does not require self-dealing in cases where a fiduciary acted in bad faith).

[70] D.I. 1 at ¶¶ 23, 31.

[71] *Id.* at ¶ 31.

[72] *Id.* at ¶ 28.

conduct permits a conceivable inference that Benson's actions, or omissions, were made in bad faith.[73]

Mr. Dyton next contends that the discovery rule independently makes his filing timely. The discovery rule tolls the statute of limitations when the plaintiff's injuries are "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[74] Mr. Dyton asserts that he had no reasonable ability to discover the dismissal or Benson's negligent actions until June 2023. Rather, he allegedly relied on Benson to act in his best interests as his attorney. Accordingly, as to substance, the special relationship between attorney and client remains relevant.[75] As to procedure, application of the discovery rule is a fact-specific inquiry that is also rarely conducive to dismissal at the pleading stage.[76]

In this case, a dismissal would be premature given the fact-specific nature of a discovery rule inquiry. Although Benson reasonably argues that filings recorded on the Superior Court's docket are not "inherently unknowable" to a layperson, Mr. Dyton alleges that Benson provided him no updates while the case pended. He further alleges that his attorneys "knowingly and recklessly failed to disclose

---

[73] *See Powell v. AmGuard Ins. Co.*, 2019 WL 4509165, at \*3-4 (Del. Super. March 2, 2020) (discussing the highly factual nature of bad faith inquires, that no "smoking gun" is necessary, and that jurors are permitted to infer bad faith from the surrounding circumstances).

[74] *Wal-Mart Stores*, 860 A.2d at 319; *Isaac*, 2025 WL 2437093, at \*12; *see also Shea v. Delcollo and Werb P.A.*, 977 A.2d 899, 2009 WL 2476603, at \*1, \*3 (Del. Aug. 13, 2009) (TABLE) (applying the discovery rule to toll the statute of limitations and applying a somewhat laxer standard of what is inherently unknowable in the context of an attorney-client relationship).

[75] *See Coleman v. Pricewaterhouse Coopers, LLC*, 854 A.2d 838, 842 (Del. 2004) ("This Court has applied the above-described 'discovery rule' in cases claiming accounting and attorney malpractice, because of the special character of the relationship between the professional and the client, and the inability of a layperson to detect the professional's negligence."). Arguably, the discovery rule may be better conceived as one of delayed accrual. Nevertheless, Delaware courts have repeatedly referenced this doctrine as one of tolling. *See ISN Software*, 226 A.3d at 733 (describing the discovery rule as an "exception to toll the time of accrual").

[76] *Van Lake*, 2013 WL 1087583, at \*8 ("Therefore, the application of the 'discovery rule' is necessarily fact-specific.").

18

material facts" regarding the status of his case,[77] and that he reasonably relied on his attorneys to keep him updated on the status of his case.[78] In that vein, a layperson, such as Mr. Dyton, could not easily access or interpret items placed on the Superior Court's efiling docket because p*ro se* litigants, unlike attorneys, have no direct access to the Superior Court's civil efiling system. Moreover, the complaint alleges no "red-flags" that triggered Mr. Dyton's suspicion that Benson acted improperly until well after the dismissal. On balance, the complaint alleges facts that permit a conceivable inference that the discovery rule applies.

Finally, Mr. Dyton contends that Benson's fraudulent concealment tolled the statute of limitations. Fraudulent concealment tolls a statute of limitations when a defendant's affirmative act of concealment prevents a plaintiff from learning the facts or otherwise leads them away from that knowledge.[79] Fraudulent concealment has two elements: (1) the defendant must have knowledge of the alleged wrong, and (2) the defendant must take an affirmative act to conceal it.[80] Although some cases suggest that reliance is also a required element,[81] the weight of authority does not support that.[82] Nevertheless, when a plaintiff asserts tolling based upon fraudulent

---

[77] D.I. 1 at ¶ 28.

[78] *Id.* at ¶ 35.

[79] *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008).

[80] *Lebanon Cnty.*, 287 A.3d at 1216; *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 176 (Del. Super. 1986).

[81] *See, e.g.*, *Tyson Foods*, 919 A.2d at 585 (stating that "a plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth"); *Akrout v. Jarkoy*, 2018 WL 3361401, at *10 n.80 (Del. Ch. July 10, 2018) (citing *Tyson Foods* for the proposition that "doctrines of equitable tolling and fraudulent concealment require reasonable reliance by the plaintiff").

[82] *See Shockley v. Dyer*, 456 A.2d 798, 799 (Del. 1983) ("In order for the doctrine of fraudulent concealment to be applicable, the physician must have had actual knowledge of the wrong done and affirmatively acted in concealing the facts from the patient."); 51 Am. Jur. 2d *Limitation of Actions* § 166 (2021) ("[R]eliance is not an element of fraudulent concealment, as is relevant to the tolling of a statute of limitations; rather, all that is required is a showing of an underlying wrong and that the defendant actually knew the plaintiff was in fact wronged and concealed that fact to deceive the plaintiff.").

concealment, she must allege fraud with particularity as required by Rule 9(b) with the caveat that she is entitled to have all reasonable inferences drawn in her favor.[83]

Here, Mr. Dyton alleges fraudulent concealment but does so only generally. Although Delaware decisional law predominantly requires this to be plead with particularity, in fairness, Mr. Dyton raises this tolling doctrine only in response to an affirmative defense raised by Benson. As explained above, factual context will be necessary to determine when the cause of action accrued and whether the other two tolling doctrines apply. For that reason, and because of the general rule that a plaintiff need not anticipate affirmative defenses in his complaint, it would be inappropriate for the Court to foreclose any of the three tolling doctrines at the pleading stage. There will be significant overlap in the scope of discovery and the evidence necessary to answer all four questions. Accordingly, the Court declines to enter a judgment of partial dismissal on the justification of fraudulent concealment because a *pro se* litigant did not plead the justification with particularity before the statute of limitations was raised as an affirmative defense.[84]

## C. Benson is not entitled to an assumption that Mr. Dyton was on inquiry notice in December 2021.

The final inquiry—whether Mr. Dyton was on inquiry notice of Benson's allegedly wrongful acts—must be considered in evaluating all three tolling

---

[83] *See Lebanon Cnty.*, 287 A.3d at 1215 ("When a plaintiff relies on fraudulent concealment, the plaintiff must plead the circumstances supporting the doctrine with particularity sufficient to advise the defendant of the basis for the claim."); *See also Am. Int'l Grp.*, 965 A.2d at 805-06 ("But, even though fraud must be stated with particularity, this is still a motion to dismiss, and the [plaintiffs] are entitled to have [the court] draw all reasonable inferences in their favor.").

[84] Moreover, as a practical matter, dismissal at this stage would be inefficient. Mr. Dyton filed an affidavit in response to Benson's motion with more particular allegations that support fraudulent concealment. The Court declined to consider it when deciding this motion or to convert the motion to one for summary judgment. Nevertheless, if those recited facts had been included in the complaint, they would have further supported denying dismissal on fraudulent concealment grounds. To that end, the Court could have just as easily permitted Mr. Dyton to amend his complaint to satisfy any heightened pleading burden for fraudulent concealment.

doctrines. Namely, inquiry notice ends any tolling period and triggers the running of the statute.[85] A plaintiff is on inquiry notice when he or she possesses enough information to cause a reasonable person to investigate the person's claim further.[86] To determine that, the Court must determine whether there "were '"red flag[s]" that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire,' and if pursued, would have led to discovery of the elements of the claim being asserted."[87]

In this case, the complaint pleads sufficient facts to suggest that Mr. Dyton was not on inquiry notice of Benson's allegedly ongoing and wrongful conduct until June 2023. Again, the central issue is not when Mr. Dyton was on notice that his case had been dismissed, but rather when he was on inquiry notice that his attorneys were not taking action in his best interest.[88] To that end, Mr. Dyton alleges that *after June 2023*, Mr. Ahern "expressed surprise at the existence of the judgment and dismissal, indicating he had not been aware of the developments and would look into it and get back with the Plaintiff."[89] Mr. Ahern's alleged reaction, as an attorney, supports an inference that Mr. Dyton, as a layperson, could not have been reasonably expected to discover the dismissal before June 2023. Further evidentiary context on this inquiry will likewise be necessary.

---

[85] *See Lebanon Cnty.*, 287 A.3d at 1212 ("Under Delaware law, inquiry notice universally limits tolling doctrines.").

[86] *Ont. Provincial Council*, 294 A.3d at 96.

[87] *Van Lake*, 2013 WL 1087583, at *7.

[88] *See Hillblom v. Wilmington Tr. Co.*, 2022 WL 17428978, at *11 (Del. Ch. Dec. 6, 2022) (noting that in the discovery rule context, where there is a professional relationship between plaintiff and defendant, "an injury is inherently unknowable when the plaintiff had no reason to believe she should investigate the professional's conduct").

[89] D.I. 1 at ¶ 11.

## IV. CONCLUSION

For the foregoing reasons, Defendants Andrew G. Ahern, III, and Joseph W. Benson, P.A.'s motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

*Via File & ServeXpress & Email*